## J. G. BLAIR, Respondent, v. ST. LOUIS, KEOKUK & NORTHWESTERN RAILWAY COMPANY, Appellant.

### St. Louis Court of Appeals, February 25, 1902.

1. **Mortgage:** NOT AFFECTED BY ALIENATION OF TITLE, WHEN. Any title to land acquired by a mortgagor after the execution of his mortgage inures to the benefit of the mortgagee, but any alienation of his title does not injuriously affect the mortgage.

2. **Specific Performance:** EQUITY. In the case at bar, the plaintiff asks for specific performance of the agreement to construct and maintain a passway for cattle under defendant's railroad tracks and a water gate and a *cul-de-sac* from the right of way to low-water mark on the bank of the Mississippi river. Specific performance of this covenant would require supervision by the court so long as the right of way over plaintiff's land shall be used for railroad purposes, for the covenant is perpetual and is to plaintiff, his heirs and assigns. *Held*, there is nothing difficult of performance to carry out the agreement, and should supervision on the part of the court become necessary there is nothing in the way to prevent the court from making further orders in the exercise of its equitable jurisdiction, or to exercise its equitable powers if it should become necessary to enforce the decree.

3. **Statute of Limitation:** WHEN BEGINS TO RUN AGAINST COVENANTS IN A DEED. The general rule in respect to covenants in deeds is that the statute of limitation begins to run from the accrual of the cause of action.

4. ———: ———. Where a suit is for the specific performance of a covenant to build a water gate, and the covenant to build was to be performed on a certain date, the breach of the performance, if the water gate is not built, is on that date, and the statute of limitation begins to run from the date of the breach.

Appeal from Lewis Circuit Court.—*Hon. E. R. McKee,* Judge.

REVERSED.

*H. H. Trimble* and *Palmer Trimble* with whom is *C. A. Mossman* for appellant.

(1)   The court has a discretion to grant or to withhold the remedy, and should withhold it, if the relief sought is inequitable.   Marble Co. v. Ripley, 10 Wall (U. S.) 339; Blanchard v. Railroad, 31 Mich. 43; Railroad v. Speers, 32 Ga. 550; Story's Eq. Juris., secs. 750, 776; City of Marshall v. Railroad, 10 Su. Ct. Rep. 846; Murfeldt v. Railroad, 25 A. & E. 144.   (2)   Respondent asks for specific performance of the covenants named in the deed.   The remedy sought is inequitable.   The enforcement of this contract will require judicial supervision, and will require it for a long period of time.   Willard's Equity, p. 292; Sullivan v. Railroad, 94 U. S. 806; 3 Eliott on Railroads, secs. 635, 935, 936, and note; Railroad v. Brickley, 21 Kan. 275; Railroad v. Speers, supra; Marble Co. v. Ripley, supra.   (3)   This contract can not be specifically performed because it is indefinite, vague and uncertain.   Maston v. Halley, 61 Mo. 196; Story's Eq. Juris., secs. 723, 726, 751; Fry on Spec. Per., 133;, Strang v. Railroad, 93 Fed. 71; Preston v. Preston, 95 U. S. 202; DeSallar v. Hanscome, 15 Su. Ct. Rep. 816.   (4)   Respondent has been guilty of gross laches, and has thereby defeated his right if he ever had any, to the remedy sought.   Willard's Eq., p. 292; Brasher v. Gratz, 6 Wheat. 528; Pratt v. Carroll, 8 Cranch 471.   (5)   The title of a purchaser at foreclosure sale relates back to the date of the execution of the mortgage.   All conditions, reservations, easements and incumbrances the mortgagor may afterwards impose on the property, are extinguished by the foreclosure and sale.   2 Jones on Mort., p. 514, sec. 1654; Railroad v. Railroad, 10 Su. Ct. Rep. 753; 3 Cook on Corp., secs. 860, 890; Railroad v. Young, 17 A. & E. (N. S.) 645; Brackett v. Railroad, 61 Mo. 405.   (6)   More than ten years elapsed from October 1, 1880, when the water gap and backwater gate were to have been completed.   Hence, the action

is barred by the statute of limitations.  R. S. 1899, p. 1027, sec. 4272; Town of Huntington v. Titus, 64 N. Y. 58.

*Blair & Marchand* for respondent.

(1)  It is true that a court of equity has a discretion in granting specific performances.  But that discretion must be exercised in accordance with the facts established—it must be a sound judicial discretion—not capricious or arbitrary, and in accordance with the established principles of equity, as applicable to the facts in each case, when general rules and principles fail to furnish exact measure of justice between the parties. This, we hold, the lower court observed and did in this case. Paris v. Haley, 61 Mo. 453; Veth v. Gierth, 92 Mo. 97; Pomeroy v. Fullerton, 131 Mo. 581; Glass v. Rowe, 103 Mo. 513; In re Ferguson's Estate, 124 Mo. 574.  (2)  Respondent has the right in equity to insist upon having the very thing done which defendant's assignor, by its covenants in respondent's deed, promised and agreed to do; a right to the specific acts for which the covenants stipulate, because it so often happens upon a breach of contract that a mere pecuniary payment furnishes utterly inadequate relief; and it is immaterial whether the remedy asked for be a specific performance or to enforce a vendor's lien.  Glass v. Rowe, 103 Mo. 513; Paris v. Haley, 61 Mo. 453.  (3)  We hold that mortgagors and vendors have the right to buy up outstanding titles, to protect their titles— their vendees.  Scott v. McCullock, 13 Mo. 13; Adams v. Cowherd, 30 Mo. 458; Speck v. Riggin, 40 Mo. 405; Orrick v. Durham, 79 Mo. 174; Bush v. White, 85 Mo. 339.  (4) An adverse possession to be good must be actual, visible, open, notorious, continuous, uninterrupted, adverse, hostile, and exclusive, under a claim of ownership.  Fugate v. Pierce, 49 Mo. 441; Bowman v. Lee, 48 Mo. 335; Harper v. Morse, 114 Mo. 317; Draper v. Shoot, 25 Mo. 197.

STATEMENT OF THE CASE.

The material allegations in the petition are that plaintiff, in March, 1868, was the owner and still is the owner of certain lands described in the petition; that on January 21, 1880, a certain railroad company known as the St. Louis, Keokuk & Northwestern Railway Company was in existence and owned and operated a line of railroad across plaintiff's said land, and that on said last-named day he executed a deed for a right of way across said land in consideration of three hundred dollars and certain covenants contained 'in said deed (which will be set out in the evidence). The petition also alleges that in December, 1887, the railroad was sold under a foreclosure of a mortgage given by said railroad company and was bought in by C. D. Perkins, who immediately took possession and on January 31, 1888, sold and conveyed said railroad to the defendant, a corporation duly organized under the laws of the State of Iowa; that the defendant took possession of and has been operating said road and was operating it at the time of the filing of the petition.

The petition alleges that a water gap, referred to and described in the deed to the St. Louis, Keokuk & Northwestern Railway Company, never had been constructed either by said company or its successor, the defendant, and the petition asks that the court decree a specific performance of the covenants of the deed in respect to the construction and maintenance of a passway under defendant's road and a water gap and a back-water gate.

The answer denied all of the allegations of the petition except those expressly admitted. For a defense the answer stated that a corporation, known as the Mississippi Valley & Western Railway Company organized under the laws of the State of Missouri prior to 1869, did, in the year 1869, enter upon the land described in the petition and took possession of a sufficient amount thereof for a right of way, to-wit, a strip one

hundred feet wide and constructed a railroad across said land completing the same in the year 1871; that the Mississippi Valley & Western Railway Company occupied, used and enjoyed said strip of land or right of way for its road, claiming title thereto, enjoying the exclusive possession thereof until April, 1874; that during its occupancy it executed a mortgage on said property including said right of way across plaintiff's land, conveying all of its rights, privileges and franchises including said right of way, and that about 1874 said mortgage was foreclosed and sold under a judgment of foreclosure, at which sale A. B. Stone became the purchaser, and that a deed was executed to him conveying said right of way and that in June, 1875, Stone conveyed said railroad to the St. Louis, Keokuk & Northwestern Railroad Company with all the rights, privileges and franchises thereto belonging, together with the right of way across plaintiff's land; that the St. Louis, Keokuk and Northwestern Railway Company took possession of the road including the right of way across plaintiff's land and held possession of the same until about the twenty-second day of July, 1887; that in 1875, the St. Louis, Keokuk & Northwestern Railroad Company, being the owner and in peaceable and quiet possession of said railroad including the right of way across said land, mortgaged the same to secure certain bonds named in the mortgage; that in 1887 said mortgage was duly foreclosed in the United States Circuit Court for the southern district of Iowa and all the property included in the mortgage was bought in at the foreclosure sale by C. E. Perkins; that in January, 1888, Perkins sold said property, including the right of way, to the defendant, a corporation duly organized under the laws of Iowa.

As a further defense the answer alleges that in the latter part of 1888, or early part of 1889, A. B. Stone and others associated with him owned a controlling interest in the stock of the St. Louis, Keokuk & Northwestern Railroad Company and that Perkins and others associated with him desired to buy

said stock; that Perkins was uninformed about any liens or claims for right of way or other indebtedness that might be held against the St. Louis, Keokuk & Northwestern Railroad Company and for that reason in negotiating with Stone it was agreed that Stone and his associates should adjust and settle all claims that might be liens upon said railroad property in existence at the date of said purchase of stock; that a bargain was concluded between Perkins and Stone by which Perkins and his associates bought from Stone and his associates the stock above spoken of and that it was agreed that as a part of the consideration of the purchase Stone was to deposit in the hands of the trustee one hundred thousand dollars of the purchase price as a guarantee against all claims that might arise against the railroad purchased and as a guarantee for said Perkins and his associates.

It was further agreed that all such claims should be adjusted by Stone and the amount paid out of the guarantee fund; that the balance, after satisfying all such claims, was to be turned over to Stone and his associates; that in pursuance of said purchase Perkins and his associates took possession of the railroad and commenced operating it; that in July, 1885, Perkins and his associates were operating the road. Plaintiff was informed of the arrangement between Perkins and Stone and was requested to try to settle any claim he might have with Stone and advised that if settlement was made that the amount of the claim would be payable out of the above-named trust fund. He was also requested by defendant's counsel that if he could not settle that he should commence suit against the railroad at once. The answer alleges that plaintiff failed and neglected to settle the claim with Stone or to commence any suit after being notified and informed of the situation and advised that it was to the interest of the owners of the railroad, Perkins and his associates, to either compromise his claim with Stone or to commence suit against the railroad company. The answer alleges that he failed for more than ten years after the

cause of action accrued and for more than ten years after he was notified of the situation and after being duly advised as to the existence of the trust fund, and the contract between Perkins and Stone respecting said fund, and the purpose for which it was created.

The answer further alleges that in the month of March, 1895, it was impracticable for him to hold the balance of said trust fund and it was turned over to Stone on his demand, except a small portion held to settle the claim of one Ruddick, then in litigation. The answer claims that the negligence on the part of the plaintiff to try to compromise with Stone and commence suit against the railroad company, is in equity a discharge of the plaintiff from any obligation to comply with the covenants contained in plaintiff's deed to the St. Louis, Keokuk & Northwestern Railway Company, if such covenants were ever binding upon appellant. The answer further pleads the bar of the statute of limitations.

The answer further alleges that the defendant does not hold or claim title to any land whatever conveyed by plaintiff's deed to the St. Louis, Keokuk & Northwestern Railway Company, and it does not own or claim to own any right of way by virtue of said deed; that its predecessor, the Mississippi Valley & Western Railway Company, entered into possession of a strip of land one hundred feet wide, claiming an easement for railroad purposes, and that it built a railroad on and along said strip and that it and its successor occupied and used and enjoyed said strip of land as a right of way for its railroad, claiming title thereto and enjoying the exclusive possession thereof, from 1869 until the commencement of this suit, and that by virtue of such entry, occupancy and possession the title of defendant became and is absolute and perfect.

The answer disclaimed any right, title or interest by virtue of the deed and denies that defendant had any information as to the execution of the deed and pleaded the statute of limitations. To the answer plaintiff filed a reply. The reply de-

nied that the predecessors of appellant took possession of a strip one hundred feet wide across the land in question; denied that the Mississippi Valley & Western Railroad Company sold a strip one hundred feet wide pursuant to the foreclosure proceedings in 1874; admitted that in June, 1875, Stone conveyed whatever interest he had in the real estate to the St. Louis, Keokuk & Northwestern Railroad Company but denied that Stone conveyed to said company a right of way one hundred feet wide or that he owned a right of way one hundred feet wide. It alleges that Stone, at the time he made the conveyance to the St. Louis, Keokuk & Northwestern Railroad Company, only owned and conveyed a right of way of said company sixty feet wide, that is, thirty feet on either side of the center of said railroad track; denied that Stone, by his purchase of said railroad, succeeded to all the rights of the Mississippi Valley & Western Railroad Company in a right of way one hundred feet wide over the lands of plaintiff, and denied that the Mississippi Valley & Western Railroad Company ever owned, possessed or claimed a right of way one hundred feet wide over plaintiff's land; admitted that the St. Louis, Keokuk & Northwestern Railroad Company, by virtue of its deed from Stone, succeeded to all the property, rights, privileges and franchises, including a right of way sixty feet wide over and across the said land of plaintiff but of no greater width, and that Stone acquired a right of way sixty feet wide by virtue of his purchase of said railway property; admitted that the defendant from about June, 1875, to July, 1887, occupied and enjoyed a right of way over plaintiff's land of the width of sixty feet and denied that it claimed the right of way during said period of a greater width than sixty feet; denied that the defendant or its predecessors ever had, held or claimed to hold the right of way over plaintiff's land adversely to the right of plaintiff or to a width greater than sixty feet, and denied that it acquired title by any adverse possession over the said lands;

denied that it ever had or held an adverse and exclusive possession of a right of way over the land of the plaintiff for ten years or any other period of time; admitted that Perkins, at the foreclosure sale, bought all the right, title and interest which the St. Louis, Keokuk & Northwestern Railway Company owned at the time of said sale in and to said road and right of way over plaintiff's land but denied that the railroad company owned a right of way to a greater width than sixty feet; admitted that Perkins on January 31, 1888, conveyed all his interest in said railroad to defendant but denied that the defendant by said conveyance acquired a right of way through plaintiff's land to the width of one hundred feet; admitted the defendant took possession of the railroad, where it was located over plaintiff's land immediately after the purchase but denied that he took possession of the right of way to a greater width than sixty feet; denied the acquisition of title by the operation of the statute of limitations; denied that the plaintiff's right of action had not accrued within ten years prior to the commencement of this suit; denied that by his laches plaintiff has lost his right to have and maintain his action; denied that defendant or its predecessors ever claimed a right of way over plaintiff's land by virtue of adverse possession or under any mortgage deed but that it holds and claims title to said right of way by virtue of plaintiff's deed to the St. Louis, Keokuk & Northwestern Railway Company.

Plaintiff to sustain the issues, on his part, offered evidence as follows: First, a stipulation between the parties to the suit that plaintiff had the title to the land in fee simple described in the petition in April, 1868. Second, a deed made and executed on January 27, 1880, by and between James G. Blair and Arabella Blair, his wife, party of the first part, and the St. Louis, Keokuk & Northwestern Railway Company, party of the second part, reciting that whereas James G. Blair, was the owner of thirty-five acres of land in section thirty-six, township sixty-two, range six, adjoining the town of Canton on

the south side and lying on the west bank of the Mississippi river, and that the party of the second part has its railway located through said tract north and south, and reciting whereas the said James G. Blair has contracted and sold to said second party all of said tract lying east of the line located thirty feet west of the center of said railway track and extending north and south through the whole length thereof except four acres, in consideration of three hundred dollars under the contract and covenants and agreements of said second party with said James G. Blair hereinafter mentioned and set forth. The party of the second part in consideration of the contract and agreement upon the part of said James G. Blair and of the covenants contracted, covenanted and agreed with said James G. Blair, among other things, to maintain a fence on the west line of the track running parallel with the road.

"And that if its successors and assigns shall and will on or before the first day of October next, erect and build a water gap and passway at the south end of the tract hereinafter conveyed where an opening now exists under said railroad track so as to connect with the Mississippi river and the land of said James G. Blair adjoining the land hereinafter conveyed to said second party on the west. Said water gap to be not less than twenty feet wide north and south, and to extend sufficiently far into the river to afford water for stock, grazing, pasturing and running upon the remaining portion of said tract owned by James G. Blair aforesaid, when said river shall or may be at low-water mark. The passway under said railroad from said land of said James G. Blair to said water gap to be made and kept in good condition so that cattle and other stock can pass from said land of James G. Blair to said water gap with ease and safety. And said second party and its successors and assigns shall and will erect and make in said waterway under said railroad a back-water gate so as to prevent the water from the river, when same is rising, backing up, or overflowing the said land of James G. Blair aforesaid, out of or through

the same; and shall maintain and keep said passway and water gap in good condition and repair so as to prevent cattle and other stock from passing over or through the same or escaping from the land of said James G. Blair aforesaid. Said passway to be kept clean, open, except in high waters. And said second party and its successors shall keep said passway and water gap in good condition and repair the same so as to prevent cattle and other stock from passing over or through or escaping from the land of James G. Blair aforesaid, out of or through the same; and shall maintain and keep said back-water gate in good condition and repair. Which said passway to and under said railroad and to the river therefrom shall be held and used by said James G. Blair, his heirs and assigns solely and exclusively. . . . . Now, therefore, for and in consideration of the said sum of three hundred dollars to said first party in hand paid by said second party, the receipt whereof is hereby acknowledged and the several contracts, covenants and stipulations upon the part of said second party herein set out and specified, and that said second party doth hereby covenant and agree for itself and successors and assigns that said James G. Blair, his heirs and assigns, that it, its successors and assigns, shall and will faithfully perform and carry out the said several contracts, covenants and stipulations upon its and their and each of their respective parts, the said first party doth hereby grant, bargain and sell unto said second party the following portions of the said real estate so as aforesaid herein first named and described, to wit."

Palmer Trimble, an attorney of defendant since its organization, testified that he did not know anything about the delivery of the original deed; that he had it and that he got it from the files in the attorney's office of the St. Louis, Keokuk & Northwestern Railway Company; that he did not know how it came to be there; did not know whether it was ever accepted by the defendant or delivered to any officer of the defendant. The deed was filed for record March 12, 1880, in the recorder's

office of Lewis county and it was duly recorded in volume thirty-three of the records of deeds in said county.

James G. Blair, the plaintiff, testified that the waterway and back-water gate under the railroad at the south end of the land named in the petition and the water gap required to be built, was never built by the St. Louis, Keokuk & Northwestern Railway Company, nor by any other person or persons or corporation succeeding it; that the railroad was completed through his lands sometime in 1871, and that the first notice he had of its completion was in April, 1871; that in 1895 he had a conversation with Judge Trimble, representing the defendant, and Ham Anderson, an attorney, with reference to settling the matter now in controversy; that in that conversation nothing was said about the trust fund of one hundred thousand dollars in the hands of Stone and he had no information at that time that said trust fund was being held to settle claims against the old company.

This was all the evidence offered by plaintiff whereupon defendant moved the court to declare the law to be that under the pleadings and the evidence the finding and the judgment should be for the defendant, which motion was by the court overruled.

The defendant to sustain the issues on its part, offered evidence as follows, to-wit:

"It is stipulated and agreed between counsel, that the Mississippi and Missouri River Air Line Railway, was incorporated under a special act of the Legislature of the State of Missouri about the year 1857.

"That by an act of the Legislature in 1868 said company was authorized to extend its road to West Quincy from Canton. That said company was consolidated on March 10, 1871, with the Mississippi Valley & Western Railway Company under the corporate name of the Mississippi Valley & Western Railway Company. That the Mississippi Valley & Western Railway Company executed, acknowledged and delivered its deed of

trust to J. M. Walker and J. Alder Ellis on March 16, 1872, conveying all of the railway and property of said company including whatever interest it owned or possessed in the right of way through the plaintiff's lands, to said trustees for the purpose of securing certain bonds issued by said company. Which deed of trust was filed for record in Lewis county, Missouri, on March 23, 1872, and is recorded in book 12, at pages 86 to 98, of the records of deeds for said county; that said mortgage deed was foreclosed by an action in the United States Circuit Court for the eastern district of Missouri, the petition being filed September 1, 1874; that a decree was rendered in said cause and the railway and property of said company sold by the master on the seventeenth of June, 1875, to A. B. Stone, and said railway and property was conveyed to said A. B. Stone, by a master's deed, which was filed for record in Lewis county on June 25, 1875, and recorded in book 25 at page 403, which master's deed conveyed whatever interest the said St. Louis, Keokuk & Northwestern Railway Company, by its mortgage, dated on November 10, 1875, conveyed to Dan P. Eels; conveying to the said Eels as trustee, all its railway and property including whatever interest it owned or possessed in and to the right of way across the lands mentioned in plaintiff's petition, which mortgage was recorded in Lewis county, November 22, 1875, in book 23, at page 607 and following.    That suit was commenced by Dan P. Eels, trustee, for the purpose of foreclosing said last-mentioned deed of trust in the circuit court of the United States for the southern district of Iowa, in June, 1887.    That W. W. Baldwin was appointed receiver for the railway and property, by said court, July 22, 1887.

    "That said court by its decree of foreclosure of said mortgage in July, 1887, directed the sale of the property by the master of that court; that the master sold said railroad and property, including whatever interest the St. Louis, Keokuk & Northwestern Railway Company owned or possessed in its right

of way across the lands in controversy, to Charles E. Perkins and made a deed to said Perkins, dated January, 1888, which deed is duly recorded in the office of the recorder of deeds in Lewis county, book 57, page 22.

"That the defendant company was organized in December, 1887, and Charles E. Perkins conveyed to the defendant all the railway and property conveyed to him by the master's deed aforesaid; said conveyance bearing date of January 9, 1888, and recorded in the office of the recorder of deeds in Lewis county, Missouri, August 23, 1888, book 44, page 585, and following. And the present defendant the St. Louis, Keokuk & Northwestern Railroad Company took possession of the railway and property so conveyed including its right of way over the lands mentioned in the petition, on January 31, 1888, and has ever since held and enjoyed the same."

There was some evidence offered by defendant tending to prove that the railroad was surveyed, located and staked through defendant's land as early as 1868, and that grade work was done on the land in 1870 and that plaintiff at the time resided in Canton.

H. H. Trimble gave testimony tending to prove the allegations in the answer in respect to the contract between Perkins and Stone and the retention of one hundred thousand dollars as a trust fund for the payment of liens against the old company; that James H. Anderson, known as Ham Anderson, was the attorney of Stone but not the attorney of the railroad company; that he, the witness, was the attorney of the railroad company; that on July 6, 1885, J. G. Blair, the plaintiff, addressed a letter to James H. Anderson asking that Anderson and the witness meet him in Canton on the Saturday following with a view of settling plaintiff's claim; that he and Anderson did meet the plaintiff and that he fully informed plaintiff about the agreement between Perkins and Stone and about the one-hundred-thousand-dollar trust fund and told him that he should settle the matter with Anderson, as Stone's attorney, and that

if he could not make the settlement that he should bring suit. "I told plaintiff I would like for him to settle on a money basis and not undertake to get the water gap, that if he couldn't do so to bring suit, that the company had this fund and wanted to settle the claim before it was exhausted and gone out of its hands." That in March, 1894, or 1895, on the demand of Stone the balance of the one hundred thousand dollars (eleven or twelve thousand dollars) was paid over to Stone, except fifteen hundred dollars retained to pay the Ruddick claim; that Perkins bought the road at foreclosure sale as trustee for the bondholders and that one hundred thousand dollars of the purchase money was retained as an indemnity against old claims that might come up against the old St. Louis, Keokuk & Northwestern Railroad Company; that the power to settle these claims was in Stone and not in the company.

Palmer Trimble testified that he was present in July, 1885, when his father, H. H. Trimble, and Ham Anderson met plaintiff at Canton and corroborated the testimony of H. H. Trimble. In rebuttal plaintiff testified that the old fence erected a short time after the construction of the road ran on a line thirty feet from the center and parallel with the railroad track; that a new fence was built about 1896 and was set over about twenty feet making the new fence about fifty feet from the center of the track; that no grading was done outside of a line thirty feet from the center of the track; that the grading was done before he deeded the right of way to the old company.

The judgment contains a finding of the facts followed by a decree for the plaintiff as follows:

"It is, therefore, considered ordered, adjudged and decreed by the court that defendant, its successors and assigns, be and they are hereby required to specifically execute, perform and carry into effect the said several covenants and agreements made by said St. Louis, Keokuk & Northwestern Railway Company with plaintiff and contained in the said deed from plaintiff to

the said St. Louis, Keokuk & Northwestern Railway Company as aforesaid by building and erecting a water gap, passway and a back-water gate at the south end of plaintiff's said tract of land as follows, to-wit:   Said passway to be erected and built in an opening existing under defendant's said railroad track at the south end of plaintiff's said tract of land, and said passway to be twenty feet wide north and south, and to extend from the west line of plaintiff's said tract of land east into the Mississippi river far enough to afford water for stock, grazing, pasturing and running upon plaintiff's said land adjoining the west line of said right of way, when said river shall or may be at low-water mark; the passway under said railroad from plaintiff's said land to said water gap, and said water gap to be made and kept in good condition by defendant, its successors and assigns, so that cattle and other stock can pass from plaintiff's said land on the west side of said right of way of defendant to said water gap and so that they can not escape over or through such passway and water gap from plaintiff's said tract of land, and by building and erecting in said passway under said railroad a back-water gate so as to prevent the water from the said Mississippi river, when the same is rising, from backing upon or overflowing the said land of plaintiff lying along and adjoining the west line of defendant's said right of way, through and over plaintiff's said land sixty feet wide as aforesaid; and said back-water gate to be made and maintained by defendant, its successors and assigns, so as not to interfere with the free passage of the stock aforesaid from plaintiff's said tract of land to and from said water gap.

"And it is further considered, ordered, adjudged, and decreed by the court that when the said water gap, passway and back-water gate shall have been erected and completed as aforesaid, that defendant, its successors and assigns, shall and must keep and maintain the same in good order and condition; and that defendant, its successors and assigns, are hereby directed and required to keep said back-water gate open except in high

waters; and that plaintiff have and recover of defendant his costs and charges herein laid out and expended and have execution therefor."

A motion for a new trial was filed and overruled. Defendant appealed.

BLAND, P. J.—I. Plaintiff as a witness testified that he had knowledge of the fact that the railroad was completed and in operation over his land early in April, 1871, and that it had been continuously operated by defendant and its predecessors up to the present time. In November 1875, the company then owning the road, executed a mortgage on the entire road and its franchises to secure its bonded indebtedness. This mortgage was foreclosed and the road bought in by C. E. Perkins for the bondholders in 1887. In 1888, Perkins sold and conveyed the road to the defendant company.

After the execution of the mortgage in 1875, but before the foreclosure proceedings were commenced, plaintiff executed to the mortgagor and then owner of the road, his deed to the right of way over his lands in consideration of three hundred dollars cash and for the future performance by the grantee and its assigns of the covenants agreed to be kept and performed. This deed was recorded on March 12, 1888, and before the trial was found among the files in the office of the defendant company. No evidence was offered showing how or under what circumstances the defendant came into possession of the deed and there is no direct evidence showing that defendant expressly accepted the deed or that it claims under it. Defendant denied that it claimed under the deed and its contention is that it does not claim under the deed, but that it claims the land under the license to occupy the land for railroad purposes created before the execution of the deed, which license it claims was transferred to it through the foreclosure proceedings of the mortgage of 1875 and the deed of Perkins.

Any title to land acquired by a mortgagor after the exe-

cution of his mortgage thereon inures to the benefit of the mortgagee, but any alienation of his title does not injuriously affect the mortgage. He may strengthen the title of the mortgagee but he can not incumber the land or place any burden upon it that will bind the mortgagee. Stewart v. Perkins, 110 Mo. l. c. 668. The title conveyed by the mortgage was not a complete title. It was nothing more than a license to hold and use the right of way over plaintiff's lands for railroad purposes. The plaintiff, notwithstanding this license, was entitled to compensation for his lands and the title in the railroad company could not become complete until it made compensation. Provolt v. Railroad Company, 57 Mo. 256; Green v. Railroad, 82 Mo. 653. For the purpose of acquiring a complete title the mortgagor, the St. Louis, Keokuk & Northwestern Railroad Company, agreed with plaintiff as to what his compensation should be. This agreement is expressed in plaintiff's deed and the suit is to enforce a specific performance of one of the covenants contained in that deed. Since the execution and delivery of the deed the defendant and those under whom it claims title have retained possession of the deed and of the right of way and have at no time offered to fully compensate plaintiff for his lands but have enjoyed the use of the same as though compensation in full had been made.

The title was completed by the execution and delivery of the deed. The defendant has succeeded to that title and has enjoyed its fruits uninterruptedly and without objection and it seems to us is estopped in these circumstances to deny that it does not claim title under the deed. Having silently enjoyed the fruits of plaintiff's deed since 1888 it is too late for it to deny that it is bound by the covenants in the deed. Green v. Railroad, supra. Plaintiff's compensation for his title has not been fully paid and can not be until the covenants to be performed by the grantee or its assigns are kept and performed or a money consideration is paid in lieu of performance. The defendant, as the assignee of the original grantee in the deed

and owning title under it, is obliged by the covenants of the deed.

II.    The plaintiff asks for specific performance of the agreement to construct and maintain a passway for cattle under defendant's track and a water gate and a cul-de-sac from the right of way to low-water mark on the bank of the Mississippi river.    Specific performance of this covenant would require supervision by the court so long as the right of way over plaintiff's land shall be used for railroad purposes, for the covenant is perpetual and is to plaintiff, his heirs and assigns.    The duties to be performed by the defendant, to build and maintain the water gate, etc., are continuous and can not be enforced at once and by one decree.    In such circumstances the earlier authorities are that a court of equity will not decree a specific performance for the reason the court can not turn itself into a supervisor of construction.    2 Story's Eq. Juris. (10 Ed.), sec. 726; Port Clinton R. R. Co. v. Cleve. & Tol. R. R. Co., 13 Ohio St. 544.    In a note to section 1405, 3 Pomeroy's Eq. Juris., among the cases enumerated where courts can not enforce the specific performance by its decrees, are classed cases containing continuing covenants.    Cited in support are Collins v. Plum, 16 Ves. 454; City of London v. Nash, 3 Atk. 512; Caswell v. Gibbs, 33 Mich. 331.

In Blanchard v. Railroad, 31 Mich. 43, the consideration clause in a deed for a right of way required the railroad to build and maintain a depot or station house on the lands described for the convenience of the public, etc.    The court, after discussing another feature of the case, said in respect to a specific performance of the contract:    "Supposing it to be admitted that the provision in the grant is susceptible of being understood in a promissory sense and is capable of being considered as in the nature of an agreement, by the defendant with the complainant, is it capable of specific enforcement by the court?"    After an able and exhaustive review of the authorities the court answered the question in the negative on the

ground, among others, that the enforcement of performance would require "a series of daily acts to extend through all future," and the court further said: "A full and complete award which, according to the settled course of the courts and the principles on which alone it intervenes, is the only admissible one, would be utterly impossible upon any data now offered or that can now be offered."

In The Marble Company v. Ripley, 10 Wall. 339, it was ruled that specific performance of a contract would not be decreed where the duties to be fulfilled by the grantee are continuous and involve the exercise of skill, personal labor and cultivated judgment.

In Strang v. Richmond P. & C. R. Co. et al., 93 Fed. Rep. 71, it was held that equity would not specifically enforce a contract to build a railroad.

In the South Wales R. R. Co. v. Wythes, 5 DeG., McN. & Gord. 880, the court refused to decree a specific performance of a contract to construct a branch railway on the ground that it would require the supervision of the court.

Numerous other cases hold that a court of equity will not enforce a contract that requires continuous supervision. Among them are Railroad v. Bodenschatz-Bedford Stone Co., 39 N. E. Rep. 703; McCarter v. Armstrong, 8 L. R. A. 625. Yet the better considered and more recent cases, to prevent a travesty of justice, have decreed the specific performance of contracts that require supervision and the making of subsequent orders for the purpose of carrying out the original decree.

In the Union Pacific R'y Co. v. Chicago, etc., R'y Co., 163 U. S. 569, the Supreme Court of the United States enforced, by decree, for specific performance, a complicated agreement made by one railroad company to permit another to use its tracks and other running arrangements. The objection that a court of equity will not decree specific performance of a contract requiring supervision or successive orders was

overruled.    Such contracts, it was ruled, would be enforced
to "prevent the intolerable travesty of justice involved in per-
mitting parties to refuse a performance of their contract at
pleasure, by electing to pay damages for their breach."

Joy v. St. Louis, 137 U. S. 1, enforced two agreements,
one between St. Louis County R. R. Co. and St. Louis, K. C.
& N. R'y Co. and the other called the "tripartite agreement"
between the commissioners of Forest Park in the city of St.
Louis, the said county company and the said Kansas City com-
pany.    The enforcement of these two contracts was likely to
require continuous supervision by the court and several sup-
plemental decrees.

The old doctrine on that subject was noticed and virtually
repudiated.

In Southern Pine Fibre Co. v. North Augusta Land Co.,
50 Fed. 26, a land company had promised a manufacturing
company that if the latter would locate its plant or factory on
the former's property, the former company would donate to the
manufacturing company a certain amount of land and build or
cause to be built a side track, and this agreement was enforced.

There is nothing difficult of performance to carry out the
agreement.    The structures provided for are sufficiently de-
scribed and are of a character that they may be erected by any
ordinary mechanic and supervision by the court would not be
necessary should the defendant in good faith undertake to carry
out the court's decree.    But should supervision become nec-
essary there is nothing in the way to prevent the court from
making further orders in the exercise of its equitable jurisdic-
tion or to exercise its equitable powers, if it should become nec-
essary to enforce its decree.

III.    The covenant is to put in the water gate on or be-
fore the first day of October, 1880.    The suit was begun in
the month of August, 1895, so that more than ten years elapsed
from the date the right of action accrued before the suit was
brought.    The defendant interposed the plea of the statute of

limitations in bar of the action. The general rule in respect to covenants in deeds is that the statute of limitations begins to run from the accrual of the cause of action. 8 Am. and Eng. Ency. of Law, p. 224; Spoor v. Green, L. R. 9 Exch. 99; Mitchel v. Kepler, 75 Iowa 207. In Missouri it has been held that while the covenant of seizin (which runs with the land) is broken the moment the deed is delivered, the statute of limitations does not begin to run until substantial damages have accrued. Chambers' Adm'r v. Smith's Adm'r, 23 Mo. 174; Dickson v. Desire's Adm'r, 23 Mo. l. c. 163; Blondeau v. Sheridan, 81 Mo. 545; Wyatt v. Dunn, 93 Mo. 459.

In State ex rel. v. Tittman, 134 Mo. l. c. 168, it is said: "That while a cause of action upon a covenant accrues upon the concurrence of any breach thereof, the statute of limitations is not set in motion where such breach is merely formal, so as to prevent recovery of substantial damages subsequently resulting; but that the statute begins to run as to those damages from the time they occur."

This is not a suit to recover damages for a breach of the covenants in the deed. Such damages, if any, may or may not have accrued within the statutory period. The suit is for the specific performance of the covenant to build a water gate, etc. The covenant to build was to be performed on or before October 1, 1880. The breach as to a specific performance was therefore made on that date, and plaintiff's right to sue for a specific performance accrued at that date. Town of Huntington v. Letus, 64 N. Y. 558. His right of action for specific performance of the covenant is therefore barred by the statute of limitations, wherefore the judgment is reversed. *Barclay* and *Goode, JJ.*, concur.