JOHN G. SNIP AND J. J. SNIP, RESPONDENTS, v. CITY OF LAMAR, A MUNICIPAL CORPORATION, APPELLANT.—201 S. W. (2d) 790.

Springfield Court of Appeals. April 22, 1947.

*Gordon R. Boyer,* and *Stemmons & Colvin* for appellant.

826

*Amos Wight, Lynn M. Ewing* for respondents.

VANDEVENTER, J.—This is a suit for specific performance. It was originally filed in four counts. The first count alleged that the plaintiffs were the owners of a 375 acre farm situated in Barton County, Missouri (giving the legal description) and alleged that Muddy Creek flowed through the lands from east to west. That to the north of Muddy Creek was approximately 100 acres and that all the improvements were on the south of said creek. That the City of Lamar is a city of the Fourth Class. Prior to the year of 1937, it obtained the water supply from Muddy Creek and had built a series of dams for the purpose of impounding water used in supplying its inhabitants. That for several years, prior to 1937, a drouth had reduced the water supply and, to augment the supply of water, the

city built another dam across Muddy Creek approximately one mile downstream, to the west of plaintiffs' farm, at Orndorff's Ford. That as a result of the building of the dam and the impounding of the water, it backed up in the channel of Muddy Creek, covering crossings used by the plaintiffs and their tenants to reach the north portion of their farm, also inundating valuable gravel bars and isolating approximately 8 acres of plaintiffs' farm. That plaintiffs, after negotiations, entered into an agreement with the City of Lamar, through its proper officers, on April 19, 1937, by which the City of Lamar agreed to build and maintain a crossing for plaintiffs as long as said dam at Orndorff's Ford was maintained and water impounded behind it. A copy of the contract was attached to the petition. That the City of Lamar, pursuant to said contract, built said crossing and maintained the same until the spring of 1943, when it was washed out. That plaintiffs notified the officers of the City of Lamar of the condition of said crossing and requested that it be repaired and maintained as provided in the contract but that the city wholly refused to do so. That plaintiffs had not claimed any damages by reason of the waters of Muddy Creek backing upon their land although the erection and maintenance of the crossing seriously affects the use of plaintiffs' land and the operation of their farm. They further asserted they had no adequate or certain remedy at law if said contract should not be enforced. That by reason of the failure of the city to maintain said crossing they were unable to farm a portion of the land lying north of Muddy Creek in 1945 and had lost crops to their damage in the sum of $300.00. They prayed the court for specific performance of the contract and asked that the city be required to maintain the crossing so long as Orndorff's dam was used for the purpose of backing water in Muddy Creek on and across plaintiffs' land and asked for $300.00 damage already suffered because of the breach of the contract.

We need not consider Counts 2, 3, and 4 as they were dismissed by the trial court.

Defendant's answer to Count One admitted the plaintiffs' ownership of the property and that Muddy Creek, a natural water course, flowed from east to west through said lands. Admitted that it was a city of the Fourth Class, that it had previously built a series of dams on Muddy Creek, had suffered from drouths which impaired its water supply and that to insure a greater supply of water built a dam across Muddy Creek, approximately one mile downstream, from plaintiffs' farm at a point near Orndorff's Ford but alleged that said dam was built in the early part of 1934. It denied the negotiations leading up to the contract; denied that such a contract was in fact entered into; denied that it built said dam and maintained it until spring of 1943, denied any notice to the City of Lamar of the bad condition of said crossing, denied that it was requested to repair and maintain the same. It also denied that any damage had been

suffered by the plaintiffs in the operation of their farm, but admitted that at a regular meeting of the city council, on April 19, 1937, a resolution was duly made and seconded and spread upon the official records and minutes of said City of Lamar, referring to an agreement between the City of Lamar and plaintiffs providing for the construction of a crossing to restore a ford which was damaged due to the inundation after the building of the Orndorff Ford dam. It further admitted that the record showed that Akerman Ament moved the agreement be accepted, which motion was seconded and all members voted Aye.

Defendant denied that the contract attached to plaintiffs' petition was the contract referred to in the resolution and asserted that the contract presented was not the contract of the City of Lamar and was not within the scope of defendant's power, in that it was not expressly authorized by law and was not executed by an officer or agent of the defendant authorized by law and duly appointed and authorized in writing. It was expressly alleged that the contract was contrary to and contravened the authorizations of the Board of Aldermen and was *ultra vires* and void. Defendant denied that the waters of Muddy Creek were backed upon plaintiffs' land or property and that they had sustained any damage but alleged that if plaintiffs had been damaged, the claim had been barred by the Statute of Limitations, under Section 1014, Revised Statutes 1939. Defendant asserted that it had obtained prescriptive rights thereto by virtue of the provisions of Sections 1002 and 1013, Revised Statutes of Missouri 1939.

It was stipulated that the plaintiffs owned the land described in their petition. The city was a city of Fourth Class and owned and operated a waterworks. That in 1934, it built a dam across Muddy Creek at Orndorff's Ford for use of its waterworks system. That on April 19, 1937, E. A. Rutherford was the mayor of the City of Lamar and L. C. Reiley was the clerk thereof. That the signatures of these individuals on the contract were genuine. That the records of the city show that on March 15, 1937, a majority of the Board of Aldermen being present, entered of record, the following:

"Mr. Gordon Massey and John J. Snip appeared before the Board to request that action be taken soon on the matter of building a ford so he can get across Muddy Creek at his farm. General discussion followed as to the extent of damage done by the building of the dam at Orndorff's Dam and promises in the past to build a ford for Mr. Snip. Alderman Steelman moved steps be taken to remedy the damage to the crossing, motion seconded by Alderman Ross. On roll call all members present voted Aye."

That on April 19, 1937, the whole Board being present, the records show the following:

"Minutes of the previous meeting were read and approved . . .

"An agreement by and between City of Lamar as party of the first part and John G. and J. J. Snip as parties of the second part, providing for construction of a crossing across Muddy Creek at the Snip farm on the Northwest Quarter of Section 25, Township 32, Range 30, Barton County, Missouri to restore a crossing which was damaged due to the building of a new dam at which place is known as Orndorff's Ford.

"Alderman Ament moved agreement be accepted, motion seconded by Alderman Ross. Roll called, all members present vote Aye."

The records of the defendant further showed that on October 16, 1944, the mayor informed the council that one of the plaintiffs was asking the City of Lamar to repair the crossing on his farm on Muddy Creek. This was discussed for some time by the mayor, city attorney and members of the council. After which the mayor appointed a committee to inspect this crossing. The records showed that on November 6, 1944, the city council met (one member absent) and received the report of this special committee whereupon Alderman Reiley made a motion for the city to comply with the contract with the plaintiffs and to install two 12-inch tile, continue the retaining wall 25 feet south, of like material as the original construction. This motion was seconded and passed unanimously. The records of the city further disclose that on August 6, 1945, after a discussion of the contract between plaintiffs and defendant, a motion was made to repair and maintain said crossing and upon a vote thereon, three councilmen voted for the motion and six voted against it.

Alderman Selvey then made a motion that the previous action of the council agreeing to repair the Muddy Creek crossing at the Snip farm, passed on October 16, 1944, and July 2, 1945, be rescinded and that the council refuse to take any action on the matter. This motion was properly seconded and carried unanimously. At each meeting of the Board of Aldermen, the minutes of the previous meeting were read and approved.

J. Carrol Combs, who was city attorney of Lamar during March and April, 1937, testified that he was instructed by the city council, at their March 15, 1937 meeting, to draw up a contract with the plaintiffs for the building of a crossing over Muddy Creek on plaintiffs' farm, after one of the plaintiffs had appeared several times before the council. That the dam had caused the water to inundate plaintiffs' land. That he drew up a contract which was unsatisfactory because the council was also contemplating digging wells for the city's water supply, and that he later re-drew it, adding the following paragraph:

"It is further conditioned by first party that this agreement is to be binding upon first party only so long as said dam is maintained

and the water is impounded behind said dam located at what is known as Ornderff's Ford on said creek, and this agreement shall extend to both second parties or their heirs and assigns.''

That on April 19, 1937, this contract, as amended, was presented to the city council, read to them, discussed and approved by them. That this contract was prepared according to the council's instructions and was the only contract presented to the council on April 19 and was the one referred to in the minutes of the city of that date. The contract, in brief, provided:

''First party, (defendant) for and in consideration of the agree-ments of second parties (plaintiffs) hereinafter set out, agrees to construct and maintain a crossing across Muddy Creek at the old crossing . . .'' on plaintiffs' land, giving specific details as to its construction, and ''. . . said crossing to be built and maintained by first party by reason of the fact that a dam erected by first party heretofore built across said Muddy Creek below said point on said creek has caused the water in said creek to back up in the channel herein within the boundary of the land of second parties, covering the natural crossing heretofore used by second parties on said premises.''

Then follows the provision as to duration of maintenance as heretofore quoted. The contract continued:

''Second parties, for and in consideration of the agreement of first party heretofore set out, agree that first party shall have the right to use, without charge, rock and creek gravel available on said farm belonging to second parties, necessary for the construction of said crossing on said premises without expense to first party except the hauling thereon to the side of said crossing, and agree to furnish first party a right-of-way upon said land to construct said crossing or to repair the same at any time during the pendency of this agreement, and for and in consideration of the first party constructing said crossing and maintaining the same as heretofore agreed by first party, second parties hereby release first party from any further claim of whatsoever nature by reason of the construction and maintenance of the dam heretofore described across said Muddy Creek and located on said creek at Orndorff's Ford and from any other claim or demand of whatever nature by reason of the impounding of water by said dam on the premises owned by them in Section 25 as above described.

''WITNESS our hands to duplicate copies hereon this 19th day of April, 1937.

CITY OF LAMAR, MISSOURI

(Signed)   By E. A. Rutherford
John G. Snip
J. J. Snip

Attest:
L. C. Reiley
City Clerk
Approved by Board of Aldermen
April 19, 1937
L. C. Reiley, City Clerk.''

Mr. Combs further testified that at one time the Council had instructed the mayor to have the street commissioner take the ''maintainer'' and put some gravel at the south end of the crossing and that this was done. That plaintiffs had been threatening to sue the city.

Lyman Reiley was the city clerk of the City of Lamar in 1937. He identified his signature on the contract and testified that the words ''Approved by Board of Aldermen, April 19, 1937, L. C. Reiley, City Clerk'' were in his handwriting; that he kept the minutes during the month of April, 1937, and that so far as he knew, the contract presented by plaintiffs, was the one referred to in the minutes of April 19, — that two copies were made and that the signature of Mayor ''E. A. Rutherford'' was genuine. He could not remember the dates he attested or signed the contract and testified that he had no independent recollection thereof.

Plaintiff, John Snip, testified that he and his brother owned the farm in question. He identified the contract and his and his brother's signatures on it; asserted that the signatures were not placed on there prior to April 19, 1937, that no other signatures were on it at the time he signed. That his attorney, Gordon Massey delivered the contract to him and that when it was delivered it bore the approval of the Board of Aldermen. He testified that there were 380 acres of land in his farm, which was traversed by Muddy Creek—100 acres lying to the north and the remainder to the south of that stream. That prior to the construction of the dam the water extended within about 400 feet of the sheep and cattle crossing, and that they only had to go one-fourth mile across Muddy Creek to the north land. After it was flooded and the crossing had washed out, it was necessary to go 1.8 miles in order to get to his land, that without using the crossing, the city had built, the stock could not get over to the north portion of the farm. That the crossing built by the city was perfectly satisfactory until 1943—some few minor repairs having been made on it by the tenants, but in 1943, it washed out. He took the matter up with the city by letter (a copy of which was introduced in evidence) and later in person and was informed that the city would repair the crossing. On November 8, 1944, he received a letter from Mr. Boyer, the city attorney, stating that he was returning the original agreement and that the Board of Aldermen had passed a motion to repair and maintain the crossing in accordance with the agreement. Because of the failure of the city to repair the crossing, he was compelled to

lower the rent on part of his land $100.00 for the year 1945 and 1946. He stated that he was unable to farm the tillable land on the north side of Muddy Creek in 1945. He testified to other items of damage which, as we view it, are not material now. He further stated that at the time of the trial the crossing was washed out and had been since 1943; that after the city council had promised to fix the crossing they did put in an additional 12-inch tile, they hauled some gravel and cement to the crossing and built a retaining wall in the summer of 1945 but refused to proceed further or to continue to maintain it. At the close of plaintiffs' evidence, a motion was made for a directed verdict which was overruled.

On the part of defendant, W. D. Griffin testified that he was city clerk of Lamar and the books and records were under his care and control. He identified the record made by the city council March 15, 1937, April 19, 1937, October 16, 1944, November 6, 1944 and August 6, 1945. He denied ever receiving a letter from plaintiff witness; admitted that the city had a copy of the contract presented by the plaintiff but did not find it until Mr. Snip produced it. It was then admitted by Mr. Boyer, city attorney, representing the defendant, that he (Boyer) had found the copy of the contract among some old paving bills. It was the same as plaintiffs' copy except that it did not bear the notation "Approved by the City Council April 19, 1937."

Guy Ross testified that he was mayor of Lamar and in 1937 was an alderman. He remembered one of the plaintiffs and his attorney appearing before the council asking for the crossing. There was a lot of discussion and he suggested that the city build it. Mr. Gordon Massey, one of plaintiffs' attorneys, had a contract; that the contract of Mr. Combs was not read. Motion was made to build the crossing and he asserted that they discussed the maintenance there and agreed not to maintain it. Mr. Massey's contract was not presented to the council and that Carrol Combs had one, which was not read. He admitted that later the city council passed a resolution to comply with the contract at the time when he was mayor, that he voted for it, but that the crossing had never been rebuilt. He further testified that the contract was later rescinded by the council.

Amos Gage, a member of the city council in March and April, 1937, testified that he was present when one of the plaintiffs and his attorney appeared before the council; that the council agreed to put in a temporary crossing and that a written contract was presented to the council. On cross examination, he said he did not remember any contract but did remember an agreement being read to the council which was accepted.

Tom Streeper, a member of the Board of Aldermen in 1937, testified that they agreed to build a crossing but did not remember whether a written contract was presented to the council.

Delbert Webb testified he was a member of the Board of Aldermen in April, 1937, was present at the meeting and as he remembered it, a petition was presented to build a crossing for the plaintiffs. That a motion was made to build a crossing, properly seconded and passed. L. F. Stanbro testified that in 1944, while working for the city, he was at the crossing and the mud was 4 or 5 feet deep and the tiles were stopped up. This was all the testimony material to the issues on Count One.

At the close of the evidence, defendant moved for a directed verdict which was overruled and the court in its decree found (1) that the City of Lamar had the power and authority to execute the agreement with plaintiffs, (2) that such contract was duly entered into and approved by the defendant and is a valid and binding contract and (3) that such contract is and should be the subject of specific performance. It decreed that the defendant should perform its contract according to the provisions thereof within six months of the date the decree became final. It was required to maintain the crossing only so long as the dam was used and the water was backed upon plaintiffs' farm. No damages were allowed.

A motion for new trial was filed alleging that it was error to admit testimony tending to contradict the written official minutes of the City of Lamar, that the verdict was against the evidence and the law, that the contract was *ultra vires* and void and that specific performance was an improper remedy.

This motion was overruled and the proper steps taken to bring it here for review.

The first question arising is, did the City of Lamar have the right to enter into a contract of the character here in controversy. Section 7786 of the Revised Statutes of Missouri, 1939 is as follows:

"The city council of any city, town or village in this state shall have power to erect, maintain and operate waterworks, or to acquire waterworks by purchase and to operate and maintain the same, and to supply the inhabitants thereof with water; to erect, purchase, acquire, maintain and operate gas and power plants, electric light plants, ice plants or any other kind of plant or device for lighting purposes, or to acquire and own the same by purchase and to maintain and operate such plants and to supply the inhabitants of such cities, towns and villages with water, light, ice and power therefrom."

If it has the power to erect, maintain and operate waterworks, undoubtedly, as an incident thereto, it has the power to provide for a water supply either by the building of dams or the drilling of wells. If it builds dams, it must have, as an incident of its right to erect waterworks, the right to procure the land upon which to impound the water.

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no

others: (1) Those granted in express words; (2) those necessarily or fairly implied in, or incident to, the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable." [Taylor v. Dimmitt, 78 S. W. (2d) 841, 336 Mo. 330.]

It certainly would have had the power to have compensated plaintiffs for the land inundated by the erection of the dam at Orndorff's Ford and it was not necessary that this compensation be in money. It could be by building them a crossing. It was within the power of the city council to determine which was better for the inhabitants—to build a crossing or to pay for the land and let the plaintiffs build it. The city evidently decided that the former was the better way. In Missouri Service Co. v. City of Stanberry, 108 S. W. (2d) 25, 341 Mo. 500, the Supreme Court of Missouri held that Stanberry, a city of the Fourth Class, could, as part of the payment for the construction of an electric light system, transfer to the constructors two used engines. The court said: "The exchange to that extent is plainly advantageous, in that it diminishes the city's necessary total pecuniary outlay." We think the City of Lamar was acting clearly within its powers when it made the contract with plaintiffs.

It is contended by appellant that this contract was executed by the mayor and the city clerk in behalf of the city and that they exceeded the powers given them by the city council and cite as authority for that proposition the case of Atwill v. City of Richmond, (Mo. App.) 132 S. W. (2d) 672. But in that case the city council authorized the mayor and city clerk to enter into a lease for an office building to be constructed and for which the city was to pay $90.00 per month as rental. No time limit was fixed. The mayor entered into a lease for ten years at $95.00 per month with the further provision that the rent might be increased above that amount in the event taxes were raised on the building. It was held the lease was void because the mayor exceeded the authority given him by the city council.

That is not the case before us. The contract here was made by the city council itself, the council had not delegated its power. More than a month before the contract was entered into, the city minutes show that one of the plaintiffs appeared before the council to request action be taken soon on building a ford so he could cross Muddy Creek at his farm. The council discussed the extent of the damage done by building the dam at Orndorff's Ford and also discussed its "promises in the past to build a ford for Mr. Snip." The minutes show "Alderman Steelman moved steps be taken to remedy the damage to the crossing. Motion seconded by Alderman Ross. On roll call, all members present voted Aye." Only two members of the council were absent on that date, Amos Gage and Thomas Streeper. At this same meeting, the council instructed the city attorney to draw a contract. He drew it and brought it back and after an examination

it was, by the council, declared unsatisfactory. The council then instructed him to insert a clause limiting the city's liability to such time as the "dam is maintained and the water impounded behind" it. This contract was rewritten containing these limitations and at the April 19, 1937 meeting of the council was again read and discussed. The completed contract was before the council. Not a "jot or title" was to be added. The technical description relating to the construction and location had been furnished by the city engineer and had been inserted in the contract by the city attorney. The minutes of the previous meeting were read and approved.

Amos Gage and Thomas Streeper were there this time, "None were absent." The minutes show, "An agreement by and between the City of Lamar as party of the first part and John G. and J. J. Snip, as parties of the second part, providing for the construction of a crossing across Muddy Creek at the Snip farm . . . to restore a crossing which was damaged due to the building of a new dam at which place is known as Orndorff's Ford. Aldermen Ament moved agreement be accepted, motion seconded by Alderman Ross. Roll called, all members present voted Aye." They were all there. There was no dissent.

The contract or agreement was signed "City of Lamar, Missouri by E. A. Rutherford (the mayor), John G. Snip, J. J. Snip." It was dated April 19, 1937 and asserted that duplicate copies were signed. The clerk signed it under the word "Attest" and it also bore this notation "Approved by the Board of Aldermen, April 19, 1937. L. C. Reiley, City Clerk."

One copy was given to the plaintiffs, or their attorney and by him to them, and the second copy kept by defendant or at least a long time thereafter, when it became a "burning issue", it was found by the city attorney "among some old paving bills." The clause limiting the duration of the contract contains the provision that it "shall extend to both second parties or their heirs and assigns."

The city council, the major, the city attorney, the city engineer, all, participated. It was not a delegation of power by the council to some other person to enter into a contract. It was the contract of the city executed by the council itself. Furthermore, the crossing was built according to the specifications in the contract and apparently it remained in good condition without any need of maintenance, or at least only slight maintenance, until 1943. Then the crossing became damaged or was impassable for some reason.

At the regular session of the council, October 16, 1944, the mayor informed them that one of the plaintiffs was asking the city to repair the crossing. It was discussed by the mayor, city attorney and members of the council at the conclusion of which a committee was appointed to inspect it. At the November 6, 1944 regular meeting of the council, the minutes of the previous meeting were read and ap-

proved and the committed previously appointed to inspect the crossing made a report. Alderman Ross made a motion for the city to "comply with Snip and City contract" to put in two 12-inch tiles and to continue the retaining wall of like construction as the original crossing. On a vote all members voted Aye. On August 6, 1945, at a regular session of the council, the contract on behalf of the city was repudiated and on December 4, 1945, plaintiffs filed this suit.

There was no breach of the contract to maintain the crossing until 1943 and hence the Statute of Limitations had not run. It is urged that the contract went further than the records of the city council in that it included maintenance when the minutes only showed construction. Assuming that before a city of the Fourth Class could contract for the construction of a water plant, it must provide for such contract and construction by ordinance, it has been held that a power merely incidental to the general power need not be authorized in writing at all. Stumpe v. City of Washington (Mo. App.) 22 S. W. (2d) 865; Haskins v. City of DeSoto, 35 S. W. (2d) 964; Austin Western Road Machinery Co. v. City of New Madrid (Mo. App.) 185 S. W. (2d) 850.

The provisions of Section 3349, Revised Statutes of Missouri, 1939 seem to have been fully complied with and we hold that the City of Lamar had the power to enter into this contract and that the contract as entered into was binding upon the city.

The appellant urges that the trial court committed error in admitting oral evidence tending to contradict and rebut the minutes kept by the city clerk. We believe appellant misconceives the purpose of this evidence. The minutes refer to a contract and agreement entered into between the city and the plaintiffs. Oral testimony was admitted to show that the contract sued upon and presented in evidence was the contract referred to in the minutes. The authorities are almost unanimous in holding that where one writing contains a reference to some other writing, parol evidence is admissible for the purpose of identifying the writing so referred to. 32 C. J. S. p. 902, 22 C. J. p. 1181, Sec. 1579, and cases cited. Bassett v. Glover, 31 Mo. App. 150. Williams v. Moniteau National Bank, 72 Mo. 292; Thornton v. Crowther, 24 Mo. 164. The admitting of such testimony was not error.

Appellant also complains that the "verdict, judgment and finding" of the court imposed a burden on the appellant contrary to the law and public policy. The evidence does not show a great burden. The crossing was built in 1937 and the evidence shows that very little, if any, maintenance was required until 1943. Appellant assumes that it is a contract for perpetual maintenance and states in its brief, "In the case at bar, the alleged promise of the city to maintain the crossing forever is out of proportion to the benefits to be received by the city." In the first place the contract for maintenance is not perpetual. Ac-

cording to its provisions the city can terminate it at any time by opening the valve in the dam and releasing the impounded water. There is no obligation on the city to maintain the crossing, except so long as the water is impounded.

Specific performance of a contract will be granted when there is no complete and adequate remedy at law. An adequate remedy must be as certain, complete and efficient as specific performance. National Marking Machine Co. v. Triumph Mfg. Co. (Mo. App.), 13 Fed. (2d) 6.

"The remedy at law must be plain, complete, adequate, and as practical and efficient to the ends of justice and to prompt administration as is the remedy in equity. Specific performance, however, may be granted on the ground that it furnishes the most convenient remedy." (58 *Corpus Juris*, p. 853, Sec. 7.)

"In order to defeat the jurisdiction of equity to decree specific performance of a contract, the remedy afforded at law must be as plain, adequate, complete, and efficient as the remedy of specific performance, and not circuitous or doubtful." (49 Am. Juris. Specific Performance, Sec. 11.)

And whether it shall be decreed is largely in the discretion of the trial court. If plaintiffs' evidence was true, and we must assume that it was because the trial court decided in their favor, the backing of the water upon their farm seriously inconvenienced them. It almost completely isolated and made an island of 8 acres, it cut off 100 acres on the north side of the creek, 40 acres of which was tillable, so that, without a crossing, it was necessary to go 1.8 miles to get to this land, instead of one-fourth mile. His stock could not cross to pasture, water inundated valuable gravel bars. He was compelled to reduce the rental value of the land $100.00 in 1945 and 1946. By reason of being unable to pasture his land, the underbrush grew up among some valuable hickory and walnut timber. It was a continuing damage, not for one year but would continue for so long as there was no crossing from the south part of his land to the north part. The damage for one year might not be the damage for another and proving the amount of actual damage would be difficult. It would be a very simple matter for the City of Lamar to maintain the crossing and thereby eliminate damage suits for losses proximately caused by the inundation of plaintiffs' land. That was evidently the view taken by the trial court when it decreed specific performance. We believe it was right in so doing. [Blair v. St. Louis, Keokuk & N. W. Railway, 92 Mo. App. 538. Kansas City v. Kansas City Terminal Ry., 25 S. W. (2d) 1055, 324 Mo. 882; Owens v. Carthage & Western Ry. Co., 110 Mo. App. 320, 85 S. W. 987.]

The judgment of the trial court is affirmed. All concur.