**SOUTHWEST DISTRIBUTORS, INC., d/b/a Southwest Dehyco Company, Plaintiff-Respondent,**

**v.**

**ALLIED PAPER BAG CORPORATION, Defendant-Appellant.**

No. 23988.

Kansas City Court of Appeals.

Missouri.

Dec. 7, 1964.

William M. Austin, North Kansas City, for defendant appellant.

Henry H. Fox, Jr., Kansas City, for plaintiff respondent.

SPERRY, Commissioner.

Plaintiff sued defendant for damages growing out of the breach of an implied warranty of fitness for intended use. Defendant counterclaimed. Trial to the court resulted in a judgment for plaintiff, on its petition, for $3,200.00, and for plaintiff on defendant's counterclaim. Defendant appeals.

Defendant's chief complaint is that plaintiff's evidence failed to establish a submissible case under the applicable law. Our review will be as in cases of an equitable nature. Unless the judgment is clearly erroneous we will not set it aside, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Sec. 510.310, Par. 4, R.S. Mo.1959, V.A.M.S.

Plaintiff has its offices in Kansas City. It is engaged in the business of manufacturing and selling mixed feeds, fertilizers, and other products. It maintains a plant in Verdun, Nebraska, where it processes corncobs for various commercial uses. Among its corncob products is a mulch which is adapted to agricultural uses. It is beneficial to soil, as an aid to moisture retention, aeration, fertilization, and the addition of humus. It is a dry, bulky material and is shipped, as are other products of plaintiff, in fifty (50) pound paper bags. Prior to the occurrence of this controversy, plaintiff had purchased bags from defendant for shipment of its other products, and the bags furnished were satisfactory. Plaintiff's managing officer, Mr. Harris, was well acquainted with defendant's sales manager, Mr. Gore. Relations between the parties were excellent.

Defendant was engaged in the business of manufacturing and selling bags for use in the shipment of various commercial products. Its factory and place of business is located in Kansas City.

Sometime prior to June, 1959, defendant's salesman called on Mr. Harris. Mr. Harris stated that he told the salesman about the new product that he intended to produce, the name of which was "Magic Mulch". He stated that he told him, generally, of its nature and purposes; that he wanted to bag it for shipment in "nice, new, fancy bags"; that the bags were to contain fifty (50) pounds of the product, to be sold chiefly in California, where there was a good demand because of the nature of the climate and soil; that he asked defendant to produce a "dummy" sample that could be shown to California customers engaged in distributing such products; that the defendant produced such a sample bag; that witness went to Los Angeles, where he contacted one Cal Erwin and sold him two carloads of the product. He also sold an order to another dealer at Van Nuys, California. He stated that, upon his return, he interviewed defendant's agent and told him that such products were, universally, stored in the open, on the ground, in California; that defendant's representative then recommended that the bag should contain an inner liner of asphalt, so as to protect its contents from moisture; that plaintiff ordered five thousand (5,000) bags; that plaintiff did not specify to defendant

any quality required of the bags except size—that they weigh fifty (50) pounds when filled, that they were to be stored outside of sheds, and the lettering that was to go on them; that he wanted them as quickly as possible because he had orders ready to be filled; that, before the bags were made, plaintiff saw and inspected the plate, (the lettering) and changed one word therein; that he was present when an extra workman, at defendant's plant, was ready to print the lettering on the bags; that the workman was having trouble with the ink; that the workman said the trouble was with the steam; that the workman, eventually, told him that he had the matter corrected; that witness left the plant after having seen some bags that "looked good". He stated that the bags were shipped to Nebraska, where they were filled and shipped to dealers in California, in box cars; that he did not see the bags prior to their shipment; that he left the making of the bags to the judgment of defendant, who was skilled in that business.

Mr. Harris stated that, about four (4) weeks after shipment, he received telephone complaints from dealers regarding the bags; that they were fading; that Mr. Erwin, a customer who had ordered and received two carloads, had then only paid for one car; that he went to California to see Erwin to collect, but that he could not collect; that, later, he made another trip to California and brought back samples of the bags, one of which was placed in evidence as an exhibit. It is before us. The advertising matter appears in red, green, and black. The red and green coloring is badly faded and the colors have "run", so that the entire bag is unsightly. It gives the appearance of being stale, shopworn. Mr. Harris stated that several hundred bags sold to Erwin were in this condition; that he had previously purchased from defendant from five to ten times the number of bags herein involved, which were used for shipment of ground corncobs and which were stored in the open by purchasers, particularly oil well drillers; that these

bags had been satisfactory and had been paid for. He also stated that one shipment of "Magic Mulch" went to B. & E. Enterprises, Van Nuys, California; that the customer refused to pay therefor, because of the above conditions, and that plaintiff took the shipment back; that Erwin had had returned to him much of this merchandise that he had sold; that the complaints were based on colors fading and running; that at no time did plaintiff suggest or specify the type of ink to be used in the printed matter on the bags.

Mr. Erwin's deposition was in evidence. His testimony fully corroborated that of Mr. Harris. He stated that he was in the wholesale garden supplies business; that plaintiff's merchandise was rendered unsaleable because of the unsightly condition of the bags, due to the faded, discolored printed matter; that the bags got in that condition within a few days after being stored in the open, even though he covered them with polyethylene sheets; that, at plaintiff's request, he took possession of the merchandise that had been shipped to B. & E. Enterprises and found it to be not merchantable; that he had tried to sell the merchandise at $25.00 per ton, or for any reasonable sum that he could get; that he could not sell it for any reasonable price; that he was demanding refund of purchase money paid by him to plaintiff.

■ Since the court found the facts for plaintiff and gave him the judgment, we have stated the evidence in the most favorable light in support of plaintiff's right to recover. We have disregarded such testimony as is contrary thereto. We accept as true the evidence favorable to plaintiff and we will draw all reasonable inferences therefrom that are favorable to plaintiff.

■ Plaintiff ordered these bags from defendant for the specific purpose of shipping its "Magic Mulch" to customers in California. Plaintiff told defendant, generally, what type and size of container it

wanted. It wanted an *attractive* bag printed in multicolors, describing the contents and stating its purposes and uses. It wanted bags that could safely be stored in the open. It was not in the business of manufacturing bags but only produced merchandise for shipment therein. It had no facilities for chemically testing the paints, inks, and other materials that went into or on the bags. It left all of that to the judgment and discretion of defendant who specialized in that business and had access to such information. It had previously ordered many thousands of bags from defendant for shipment of similar merchandise under similar conditions.

The court heard the evidence, observed the demeanor of the witnesses in the courtroom, had before it one of the faded, discolored bags, and found the issues for plaintiff. The judgment is well supported by the evidence.

■ Defendant is bound by the well settled law on this subject, to-wit: that a manufacturer-seller of an article for a particular purpose impliedly warrants that such article will be reasonably fit for that purpose for which it is intended to be used, *if the buyer communicates to the manufacturer-seller the specific purpose for which he wants the article, and if he relies, and has reason to rely, on the producer-seller's skill, judgment and experience to produce an article that will answer the purpose.* Interstate Folding Box Co., v. Hodge Chile Co., Mo.App., 334 S.W.2d 408–414; Price Bros. Lithographic Co. v. American Packing Co., Mo., 381 S.W.2d 830–835.

■ The doctrine does not apply to well known or commonly used articles. It rests in part upon the principle of superior knowledge and experience of the producer-seller. However, if the purchaser has, or acquires by testing and analysis, knowledge equal to that of the seller the rule does not apply because the seller has no superiority of knowledge of the facts. Price Bros. Lithographing Co. v. American Packing Co., supra, 836–837.

The evidence in this case supports the court in its finding of the issues for plaintiff against defendant. The evidence was to the effect that plaintiff relied wholly on defendant to produce bags for a specific purpose; that that purpose was communicated to defendant; that plaintiff did not specify the types of materials to be used but relied on defendant's judgment and skill in producing an article reasonably fit for its purposes; that plaintiff had previously purchased from defendant bags for similar purposes which were suitable therefor; that plaintiff had reason to rely on defendant's skill and judgment to produce for it a bag reasonably fit for its intended use; that the bags produced were not reasonably fit for that use; and that, by reason thereof, plaintiff suffered damages as adjudged by the court.

■ Defendant contends that the judgment is excessive because it includes freight charges on merchandise shipped to California which charges were, in fact, paid by buyers to whom plaintiff shipped the merchandise. The evidence is to the effect that plaintiff is obligated to make its customers in California *whole* as to their losses, the merchandise having proved to be unmarketable because of the defective containers.

This contention is denied.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court.

All concur.