**E. L. DILL and Helen Dill, Plaintiffs-Respondents,**

v.

**POINDEXTER TILE COMPANY, a Corporation, Poindexter Carpet and Linoleum, Inc., a Corporation and Arl W. Poindexter, Jr., Defendants-Appellants.**

No. 8890.

Springfield Court of Appeals, Missouri.

Feb. 10, 1970.

Rehearing Denied March 5, 1970.

Milton B. Kirby, Kirby, Millsap & Lewis, Springfield, Mo., for plaintiffs-respondents.

Theodore C. Salveter, Jr., Walker & Salveter, Springfield, Mo., for defendants-appellants.

TITUS, Presiding Judge.

E. L. Dill and Helen Dill (collectively called "the Dills") instituted this action for a declaratory judgment [1] against Poindexter Tile Company, a corporation, Poindexter Carpet And Linoleum, Inc., a corporation, and Arl W. Poindexter, Jr. (denominated as "the Poindexters" in the aggregate) in the Circuit Court of Greene County. A judgment without jury aid was rendered favorable to the Dills and the Poindexters have appealed.

For several years the Poindexters had provided the Dills, who were in the construction business, with labor and materials and their dealings gave rise to a host of controversies. Some of the disputes found their way into court, not the least of which were cases numbered 49031, 51227 and 50190,[2] described as being "now pending

---

1. Civil Rules 87.01, 87.02(a) and 87.03; Sections 527.010, 527.020 and 527.030. All references herein to rules and statutes are to Missouri Supreme Court Rules of Civil Procedure, V.A.M.R., and to RSMo 1959, V.A.M.S.

2. Case No. 49031 represented a suit by Poindexter Tile Company against the Dills and another to perfect a mechanics' lien. A "judgment by default" in the principal sum of $2,360 was entered against the Dills on April 21, 1966, but a "Motion To Set Aside Judgment * * * In The Nature Of A Writ Of Error Coram Nobis," was filed by the Dills on October 20, 1966, and apparently has never been determined.

Case No. 51227 was a suit filed June 21, 1966, by the Dills against Poindexter Tile Company and Arl Poindexter whereby the Dills sought $3,873.07 in damages because of alleged faulty labor and ma-

terials furnished at three addresses on East Latoka Street in Springfield. Poindexter Tile Company counterclaimed against E. L. Dill on a $403 promissory note dated October 16, 1964, and additionally averred the Dills were indebted to the company in the sum of $11,119.26 for labor and materials furnished on various dates at different places.

Case No. 50190 was instituted January 10, 1966, by Concrete Company of Springfield against the Dills and 16 other defendants to enforce a $2,278.39 mechanics' and materialmen's lien on Lots 14 to 21 in Susan Terrace Subdivision. Per Civil Rule 101.12, Poindexter Tile Company was added as a defendant to the cause on June 27, 1966, and by crossclaim asserted a $1,471 lien and a $751 lien, respectively, on Lots 14 and 18 (later changed to Lots 14 and 17) in said addition.

in the Circuit Court of Greene County, Missouri." Probably near the first of March 1967, in an apparent effort to resolve their differences, Arl Poindexter prepared in his own hand a "To Whom It May Concern" document which both he and E. L. Dill signed. Later, i. e., "in December of 1967 or early in January of 1968," the Dills and the Poindexters executed a written contract dated "this ____ day of December, 1967," which was drawn by their attorneys ostensibly for the same reasons which prompted preparation of the earlier agreement.

The handwritten agreement prepared by Mr. Poindexter reads: "This is to certify that Arl P & E. L. Dill have reached an agreement which will require Arl P. to release Judgment against the Dills [3] & mark all acct. prior to March 1, 1967 Pd. in full except the note for approx. 403.00 [4] and all claims in Susan Terrace against the Dills will remain as is.[5] In general the 11,000.00 against the Dills [6] is to be marked pd. except the note.[7] Mr. Dill promise to Arl P or Poindexter Tile in the return for the above as follows withdraw suit on the 3 houses on Latoka[8] & to give equity in 2 houses 303 Burton & 1054 Bruce. The 2 houses to have the minimum of 8500 Total equity figuring them at 12,500. ea. * * [9] Mr. Dill is to furnish M. P the said properties free & clear except the 2 permanent loans. No other lien & etc. against these houses. Abstract will be brought to date & transferred. * * * [10] Mr. Poindexter understands that one of these houses is rented & other one sold on contract for deed. Both payment are current."

Though perhaps sufficient unto those steeped in unpenned knowledge, the record in this case lacks considerable clarity for us who are solely dependent upon the written transcript for information. We can only surmise, therefore, that little, if anything, was done to implement the earlier agreement and that no action of any consequence was undertaken until after the parties signed the December 1967 contract. Partially paraphrased, the latter agreement acknowledged that difficulties of the parties were "reflected in certain open accounts" and the numbered cases explained in footnote 2, supra, and recited: "9. When the conditions of this Contract have been met, all of the differences existing as of the date of this Contract shall be resolved between the parties and it is their intention to mutually release each other from any further claims which have accrued prior to the date of execution of this Contract of all matters existing between them." The contract specified that cases numbered 51227 and 49031, including the counterclaim in Case No. 51227, were to be dismissed with prejudice at the cost of the Dills and that "8. * * * [the Dills] shall not contest the claim of [the Poindexters] or any of them in * * * Case No. 50190 in consideration that [the Poindexters] or any of them, shall provide [the Dills] with a release from any other real estate from any judgment therein as the transactions of [the Dills] shall from time to time require." It was additionally pro-

---

3. We assume this refers to the "default judgment" in Case No. 49031.

4. This apparently alludes to the crossclaim on the promissory note in Case No. 51227.

5. Probably has reference to the crossclaim in Case No. 50190.

6. We can only assume this is the same item as the $11,119.26 counterclaim asserted in Case No. 51227.

7. See note 4, supra.

8. This refers, we assume, to the Dills' claim in Case No. 51227.

9. The omitted portion concerned the state of repairs of the two houses and the Poindexters made this an issue by their answer. However, as this issue was given but cursory consideration at trial and has been completely forsaken upon appeal, it will be given no further attention.

10. The part we have omitted here referred to the insurance on the houses to be conveyed and is of no moment for concern on this appeal.

vided by the December 1967 contract that the Dills were "to pay the special tax bills and taxes for 1966 and their pro rata share of taxes for 1967 on [the property at 303 Burton]" and "to show paid and released of record a Second Deed of Trust [on the property at 1054 Bruce]." The Poindexters agreed to "have the abstracts on the two aforementioned properties recertified and re-extended at [their] cost" and it was understood "that any defects in title or additional judgments and liens which may appear therein shall be corrected by [the Dills] except the judgment lien created in [Case No. 50190] named above herein." Although the counterclaim of Poindexter Tile Company in Case No. 51227 was to be dismissed with prejudice, E. L. Dill, nevertheless, promised that the $403 promissory note was "to be paid in its face amount."

The parties agree that the intent and purpose of the two writings was to effect a full and complete settlement of all their differences. In this action, however, the Dills declared only upon the December 1967 contract and have continuously contended that it was a complete substitute for the handwritten agreement and that the contract prepared by Mr. Poindexter was totally merged into and obliterated by the December 1967 document. The Dills alleged that Poindexter Tile Company was allowed to secure an uncontested personal judgment against them only because such procedure was necessary to perfect the special judgment (mechanics' lien) against the described property and that, as paragraph 8 of the December 1967 contract provided, and the parties intended and understood, the company was restricted to collecting its claim under the judgment against that real estate only. It was further asserted by the Dills (and subsequently so stipulated) that after execution of the December 1967 contract, counsel for the Poindexters discovered a defect in the crossclaim of Poindexter Tile Company in Case No. 50190, that the company thereupon (after being paid $750 by some of the defendants in that case) released the real estate from the mechanics' lien and was asserting a right to proceed on the judgment against the Dills personally. Poindexters, by their answer, declared upon both contracts and asseverated the two could not be considered "individually and separated from the [other], but * * * must be read mutually and together;" they denied that they "were to only have their remedy of a mechanic's lien against the real estate" in Case No. 50190. The Dills, as the Poindexters additionally averred, had "breached" the earlier contract "and fraudulently entered into" it because they "did not have a total of $8,500.00 equity in the properties they were to convey." In conclusion, the Poindexters prayed that the court declare the rights of the parties under both contracts, to determine that the Dills had so breached the agreements as to make them null and void, and permit the Poindexters to "pursue the lawsuits now pending."

The trial court found and adjudged that "under a true construction of the contract of December 1967, * * * such contract operated as a mutual release of all disputes between the parties reflected in open accounts and in [the numbered cases], and that all claims accruing prior to the execution of the contract were released by the same [and that] under the [December 1967] contract [the Poindexters] are obligated not to obtain a personal judgment in Case No. 50190, except for the purpose of establishing mechanic's liens in said case and not for the purpose of obtaining or collecting on a personal judgment against the [Dills] except out of the properties described in Case No. 50190." In its written memorandum, the court nisi observed that it had arrived at its "decision herein without deciding whether there was such merger" of the handwritten agreement with the December 1967 contract "as to relieve [the Dills] of the alleged 'total equity' duty," by finding, in effect, that the Dills had substantially complied with both contracts. One of the trial stipulations noted

that the Poindexters "raise no question of compliance by the [Dills] with the [December 1967] contract except as based on the matters alleged in [the Poindexters'] answer."

As a general rule, an informal or preliminary memorandum of the parties is merged into a subsequent formal contract (17A C.J.S. Contracts § 381, at p. 452), and when parties reduce prior agreements into an integrated, unambiguous contract, all prior contracts are merged therein and become inoperative if they concern the same subject matter. Louis v. Andrea, Mo., 338 S.W.2d 96, 102–103(5, 6). Nonetheless, whether a second contract concerning the same subject matter as a former agreement made by the same parties works to discharge and replace the first undertaking, presents a difficult question of interpretation when, as here, the second contract does not expressly provide whether or to what extent it is intended to operate in discharge or substitution. In such circumstances the two contracts must be interpreted together and insofar as they are inconsistent the second contract prevails and the balance of the first agreement, insofar as it is consistent with the second in purpose and substance, may be enforced. Ewing v. Miller, Mo., 335 S.W.2d 154, 158(4); Ragan v. Schreffler, Mo., 306 S.W.2d 494, 498(2); 6 Corbin on Contracts § 1293, at p. 198.

The task of interpretation in this case is particularly onerous because we cannot detect with certainty if the differences in the two agreements constitute conscious deliberate inconsistencies or result from unintended omissions and oversights of the scriveners. Except for the judgment lien created in Case No. 50190, the December 1967 contract seemingly obligated the Dills to rid the properties at 303 Burton and 1054 Bruce of all title defects and liens (which would include first deeds of trust), but surprisingly enough did not contain a provision which would require them to convey the properties to the Poindexters. Under the first agreement Mr. Dill, who acting alone could not bind his wife by his sole contract [Freeman Contracting Company v. Lefferdink, Mo.App., 419 S.W. 2d 266, 273(5)], promised "to give equity in 2 houses * * * free and clear except the 2 permanent loans," which we surmise to mean the two first deeds of trust. Without indulging the assumptions made in footnotes 3 to 8, supra, it cannot be said the first contract dealt with precisely the same subject matters as the second, and certainly the December 1967 contract contains no provision comparable to that embodied in the first which indicates what the total minimum equity in the two houses was to represent. To avert unnecessary prolixity, we omit further discussion of other discrepancies which the discerning reader can quickly discover for himself. It has been stated that if the alterations effected by the second contract are "such that the conditions of the earlier contract cannot be restored without placing one of the parties under a permanent and substantial disability, there is a strong prima facie probability of an intention to rescind the earlier contract." 17 Am.Jur.2d, Contracts, § 459, at p. 926. In fairness and equity, we believe the converse should also be true, otherwise all parties to this controversy stand to suffer.

Most of the points and arguments made by the Poindexters on appeal are directed at what they term to be speculative and erroneous reasons given by the trial court for its ruling. We need not determine if these urgings of the Poindexters are accurate. A correct decision will not be disturbed even if the court expresses insufficient or wrong reasons for its judgment, and this rule is equally applicable to a correct result in a declaratory judgment action. Edgar v. Fitzpatrick, Mo. (banc), 377 S.W.2d 314, 318(12). Other complaints are made by the Poindexters as to the apparent preference of the trial court for the testimony of E. L. Dill over that given by Arl W. Poindexter, Jr., the only two witnesses to testify in the case. To our way of thinking this is simply an oblique way of

saying that the evidence was insufficient to support the judgment, but ignores the fact that in court-tried actions we are obliged to accept as true the evidence and all permissible inferences therefrom favorable to the prevailing party and disregard such testimony as is contrary thereto [Southwest Distributors, Inc. v. Allied Paper Bag Corp., Mo.App., 384 S.W.2d 838, 840(2)], and not to set aside the judgment unless it is clearly erroneous. Civil Rule 73.01(d); § 510.310 subd. 4; Galemore v. Mid-West National Fire & Cas. Ins. Co., Mo.App., 443 S.W.2d 194, 200(10). Our duty to review the case upon both the law and the evidence as in suits of an equitable nature does not demand that we review the entire action to determine what result we would have reached as trial judges, but extends to only those matters properly reviewable upon appeal which are specifically urged by the applicants as constituting error. Schlanger v. Simon, Mo., 339 S.W.2d 825, 828(1). Therefore, we now attend to Poindexters' points that the trial court (a) erred in holding the Dills had substantially complied with the handwritten contract by finding that the Poindexters had received a total equity of approximately $8,500 in the two houses which were conveyed, (b) erred in vitiating the Dills' "fraud" by finding "that Poindexter could have gotten a copy of the contract for deed when the evidence showed that it was Dill's responsibility to furnish the copy [and] that Poindexter made every reasonable effort to obtain it" before the second contract was signed, and (c) "erred in finding that the [December 1967] contract prevented [the Poindexters] from taking a personal judgment * * * in Case No. 50190, because the language of the contract did not so state but showed along with [the Poindexters'] evidence that the intention of the parties was to allow a personal judgment."

Before Poindexter composed the first agreement he had seen the properties at 303 Burton and 1054 Bruce, which he valued at $12,500 each, and had been told by Dill that the Bruce real estate "was on a contract for a deed." He was also informed that "there was approximately a $7,500.00 loan against each of them," and that Dill "thought the [Burton] property may be worth more than" $12,500. Dill denied that he ever told or led Poindexter to believe the contract for a deed was in the sum of $12,500 and opined, without direct contradiction, that the Burton place had a value of $15,500 to $16,000. Allowing for some error in Dill's memory, and based on his assertion that Dill told him the contract for a deed was for $12,500, Poindexter testified he had privately figured there might be as much as $8,000 against each house "on the deeds of trust" and an equity of "approximately between $4,000 and $4,500" in each. The contract for a deed was in fact in the sum of $9,000 but the transcript on appeal does not reveal the actual amount of indebtedness secured by the deeds of trust. When Poindexter (at a time unknown to us) asked Dill for a copy of the contract for a deed, he was told Dill did not have one but that Poindexter could obtain a copy from Bel-Air Realty. Poindexter admittedly did get a copy of the contract from Bel-Air Realty after the December 1967 contract was executed and explained the delay by stating "I knew where [Dill] told me I could get it, but I didn't think I had any right to go and ask the man for one * * * I thought it was Mr. Dill's responsibility to get that for me."

It should be remembered that a trial court may decline to believe the testimony of any party [Southwestern Bell Tel. Co. v. Crown Insurance Co., Mo.App., 416 S.W.2d 705, 711(6)], and when the cleavage in the testimony of a court-tried case is acute, we cede great deference to the better opportunity afforded the trial court to judge of the credibility of the witnesses. Clinton v. Staples, Mo.App., 423 S.W.2d 1, 3(4). Had the trial court concluded that Mr. Dill did not represent to Poindexter that the contract for a deed was in the sum of $12,500, we would be in no position

to say that it erred. Likewise, we do not believe that what Mr. Poindexter "didn't think" about his rights to get a copy of that contract (in face of the fact he actually obtained one from the suggested source) or "thought" concerning Mr. Dill's responsibility, posed any evidence which the trial court was compelled to believe. Ordinarily one's understanding about a matter is not competent evidence [Cox v. McKinney, 212 Mo.App. 522, 530(3), 258 S.W. 445, 447–448(8)], and what a witness "thought" or "didn't think" does not usually constitute substantial evidence justifying or permitting a finding to that effect. Armstrong v. Croy, Mo.App., 176 S.W.2d 852, 853–854 (1–3). Therefore, it cannot be agreed, as the Poindexters state in their points, that "the evidence showed that it was Dill's responsibility to furnish the copy [of the contract for a deed or] that Poindexter made every reasonable effort to obtain it, [before the second] contract was signed." One essential element of actionable fraud is the hearer's right to rely upon the speaker's representation [Ackmann v. Keeney-Toelle Real Estate Company, Mo. (banc), 401 S.W.2d 483, 488(4)] and the failure to establish this is fatal to a recovery or a defense. Powers v. Shore, Mo. (banc), 248 S.W.2d 1, 5(2). When dealing at arm's length, the hearer of a false representation is generally not entitled to rely upon it if he could have discovered the truth by exercising ordinary care, particularly when the means of knowledge are available to both parties. Shechter v. Brewer, Mo.App., 344 S.W.2d 784, 787–788(1); 37 C.J.S. Fraud § 34a, at pp. 278–280. If the trial court had assumed (which it did not) that Dill had falsely represented to Poindexter that the contract for a deed was in the amount of $12,500, this would not prevent the court from also finding (which it did) that a copy of the contract was as readily available to Poindexter as it was to Dill and that Poindexter's alleged efforts to obtain a copy thereof from sources other than the one to which he had been directed (and where it was ultimately secured) did not evidence the use of ordinary care upon his part. Poindexters present an anomaly in their answer: they contend, in effect, that through Mr. Dill's averred fraud they should be unshackled from all their obligations under the two contracts and left free to pursue their claims against the Dills as though nothing had occurred. The fraud victim may elect to affirm the contract and seek his damages or he may repudiate the transaction and be placed in status quo, but he cannot do both. Dowd v. Lake Sites, Inc., 365 Mo. 83, 90(2), 276 S.W.2d 108, 112 (2). If granted their prayer, the Poindexters would retain the two properties conveyed to them by the Dills and enjoy the benefits of the Dills' other performances (actual and tendered) under the agreements, and remain at liberty to collect their accounts from and maintain their lawsuits against the Dills. This, of course, is something they cannot be permitted to do. 37 C.J.S. Fraud § 65, at pp. 354–358.

■ The first agreement stated that the Burton and Bruce properties were "to have the minimum of 8500 Total equity figuring them at 12,500. ea." Poindexters do not contend either property had less than an actual market value of $12,500 or that "figuring them at" such a price constituted a warranty as to what the maximum value of each house would be. Neither do we detect any claim that the equity in each house had to be a minimum of $4,250 in order to satisfy the existence of an "8500 Total equity" in both properties. The Poindexters do, however, insist that in calculating the equity in the Bruce property, its value for such purposes cannot exceed $9,000 or the amount of the contract for a deed. Though we may accede to this, we do not agree that in determining the equity in the Burton property its value is fixed at $12,500. If the Dills' evidence was true, and we must assume that it was because the trial court decided in their favor [Snip v. City of Lamar, 239 Mo.App. 824, 837(12), 201 S.W.2d 790, 798(12)], the Burton property, as Dill testified, had a value of $15,500 to $16,000 which, considering the first deed of trust at $7,500 or $8,000, would

give it a transferrable equity of from $7,500 to $8,500. Subtracting the indebtedness secured by the deed of trust from the $9,000 contract for a deed, indicates an equity in the Bruce property of $1,000 or $1,500, so that the "Total equity" in the two properties would range from $8,500 to $10,000. It was not necessary for the trial court to ascertain the precise value of the equity in the real estate conveyed by the Dills to the Poindexters or to adjudge if the Dills' performance would constitute a complete defense in a suit against them for damages. The basic problem for the trial court was whether the performance by the Dills was of such a substantial quality that the Poindexters were not privileged in refusing to render the reciprocal promises they made in the agreements. 3A Corbin on Contracts § 700, pp. 308–311. In the circumstances of this case we cannot say the trial court was clearly erroneous by finding and holding that the Dills had substantially performed their end of the bargains and that the Poindexters should do likewise.

█ It was alleged in Case No. 50190 that the Dills were the debtors as well as the owners of Lots 14 and 17 in Susan Terrace Subdivision. Poindexter Tile Company's crossclaim prayed for both a money judgment against the Dills and a decree to perfect and perpetuate its statutory mechanics' liens against the two lots. Had the crossclaim been successfully carried through to judgment without settlement or dismissal, the proceedings and judgment would have been "the same as in ordinary civil actions." Civil Rule 101.03; § 429.-180; Mid-West Engineering & Const. Co. v. Campagna, Mo., 421 S.W.2d 229, 232. One portion of the bipartite judgment would have been an in personam judgment for money that would become a lien on all real estate in the county belonging to the Dills [Civil Rule 74.34; § 511.350]; the other part would be in rem and enforce the mechanics' liens already asserted against Lots 14 and 17—it would not constitute a lien on any other property belonging to the

Dills. Rosenzweig v. Ferguson, 348 Mo. 1144, 1152–1153, 158 S.W.2d 124, 127–128; 57 C.J.S. Mechanics' Liens § 317, p. 1002. The parties labor under the assumption that Poindexter Tile Company could not have a decree enforcing its mechanics' liens without also securing a personal judgment against the Dills, although Rosenzweig, supra, and Hill v. Chowning, Scott & Co, 93 Mo.App. 620, 67 S.W. 750, illustrate that it is possible for there to be a judgment enforcing a mechanics' lien without an accompanying personal judgment against the debtor-owner. This assumption of the parties, although it may be erroneous, must necessarily be considered in comprehending the import of the December 1967 contract and the intention of the parties.

The fallacy in Poindexters' point that the trial "court erred in finding that the [December 1967] contract prevented [them] from taking a personal judgment against [the Dills] in Case No. 50190," is that the court made no such finding. In its judgment the court declared that "Under the contract [the Poindexters] are obligated not to obtain a personal judgment in Case No. 50190, *except for the purpose of establishing mechanic's liens in said case* and not for the purpose of obtaining or collecting on a personal judgment against the [Dills] in said case, except out of the properties described in Case No. 50190." (Our emphasis).

█ We cannot concern ourselves with what the parties might have said or should have said in the December 1967 contract. Brackett v. Easton Boot and Shoe Company, Mo., 388 S.W.2d 842, 847(4). Rather, we must ascertain and give effect to the intention of the parties as it is gleaned from within the four corners of the agreement and the surrounding conditions and circumstances. Mathews v. Knoll Associates, Inc., Mo.App., 388 S.W.2d 529, 532(1). The tenor of Mr. Dill's testimony was that the parties understood and agreed that Poindexter Tile Company would be allowed to obtain a judgment on its crossclaim in Case No. 50190 only to permit recovery against

Lots 14 and 17 and that the intent and purpose of the contract was to release the Dills personally from liability for the accounts stated in the suit. Mr. Poindexter allowed that it "was the intention at the time this [contract] was entered into to try and recover as much as could be recovered by way of the mechanic's lien," but stated that it was not his "intention to release [the Dills] from the obligation if [he] could not collect it by way of mechanic's lien." Thus we again have a situation where it was necessary for the trial judge to decide between conflicting testimony, assisted in this instance, however, with knowledge of the facts and circumstances surrounding the agreement as well as the words of the contract itself.

Upon the supposition that a personal judgment was a condition precedent to perfecting the mechanics' liens in Case No. 50190, it is evident that the parties contemplated that if the Dills, as they agreed, did not contest the counterclaim, a personal judgment against the Dills and a decree perfecting the mechanics' liens on Lots 14 and 17 would be forthcoming. As contracting parties are presumed to know the law and have it in mind when drafting their agreements [Hubbard v. Hubbard, Mo.App., 264 S.W. 422, 423(2)], we assume that the Dills and the Poindexters knew that the personal judgment would constitute a lien on other real estate belonging to the Dills and undertook to remove the sting from what they considered to be a necessary evil by obligating the Poindexters to release "any other real estate from any judgment" obtained in Case No. 50190 "as the transactions of [the Dills] shall from time to time require." This left the Poindexters with the mechanics' liens on Lots 14 and 17 and a personal judgment against the Dills that had been shorn of security. The contract did not terminate at this point but blossomed into an all inclusive provision that when

the conditions of the contract had been met "all of the differences existing * * * shall be resolved between the parties and it is their intention to mutually release each other from any further claims which have accrued prior to the date of execution of this Contract of all matters existing between them." We view this to be a general release embracing all claims and demands except for those matters specifically and otherwise excepted. Williams v. Riley, Mo.App., 243 S.W.2d 122, 124(2). A release unrestricted to a particular demand ordinarily covers all claims [Daniels v. Tip Top Plumbing & Heating, Inc., Mo.App., 409 S.W.2d 741, 745(1)], and although it is not necessarily restricted to pending litigation when couched in the broadest possible terms [Lucio v. Curran, 2 N.Y.2d 157, 157 N.Y.S.2d 948, 139 N.E.2d 133, 136(3)], a release, when executed pendente lite, usually releases all demands then in suit. 76 C.J.S. Release § 51, at p. 697. By the contract of December 1967, the parties provided a specifc means (mechanics' liens on Lots 14 and 17) whereby Poindexter Tile Company could satisfy the claim presented in its crossclaim, then followed this with an effort to emasculate the personal judgment as best they could blended with an expression that the contract was intended to resolve all differences and serve as a mutual release of "all matters existing between them." Viewed in the light of the words of the contract and aided with the reflections cast by the intent of the parties and the surrounding circumstances and conditions, we may not say that the trial court was clearly wrong in concluding that the Poindexters were privileged in securing a personal judgment in Case No. 50190 only for the purpose of establishing mechanics' liens and not for the purpose of collecting on a personal judgment against the Dills.

For the reasons stated, the judgment is affirmed.

STONE and HOGAN, JJ., concur.