The METROPOLITAN ST. LOUIS SEWER DISTRICT, a municipal corporation, et al., Respondents,

v.

Frank E. ZYKAN [1] et al., Appellants.

No. 56130.

Supreme Court of Missouri, Division No. 1.

May 14, 1973.

Motion for Rehearing or to Transfer to Court En Banc Denied June 11, 1973.

1. Defendant Frank E. Zykan died February 26, 1973 subsequent to submission of this appeal January 9, 1973. On April 12, 1973, Motion of Plaintiffs-Respondents For Substitution was sustained and Frank E. Zykan, Jr., Administrator of the Estate of Frank E. Zykan, Deceased, was ordered substituted as a defendant-appellant in the place and stead of Frank E. Zykan, now deceased.

Charles B. Kaiser, Jr., Edward G. Wiegers, St. Louis, Gerald A. Rimmel, Susman, Willer & Rimmel, St. Louis, for plaintiffs-respondents.

David G. Dempsey, Richard B. Dempsey, Dempsey, Dempsey & McCarthy, Clayton, for defendants-appellants.

HIGGINS, Commissioner.

Action in three counts to cause defendants to construct a drainage channel pursuant to terms of real estate sales contracts, and for damages to two improved tracts of real estate resulting from failure to construct the channel. The judgment and decree ordered defendants to construct the channel improvement in accordance with plans submitted by them to plaintiff The Metropolitan St. Louis Sewer District, and awarded $1,400 damages to plaintiffs Fischer and $1,450 damages to plaintiffs Kuhlmann and Scott. Present cost of the required construction was estimated at $50,000. (Appeal taken prior to January 1, 1972.)

In Count I, The Metropolitan Sewer District alleged its constitutional power to control and regulate drainage and sewer facilities within its boundaries and enactment of two ordinances in exercise of such power establishing rules and regulations pertaining to such facilities; that defendant Frank E. Zykan, Inc., was the builder and developer of Midland Valley Estates, Plats 1, 2, 3, 4, and 5 in St. Louis County Missouri; that Zykan, Inc., submitted plans for construction of drainage facilities in Plats 2 and 3, and, after approval of the plans by MSD, secured permits for piping of storm water through sewers and drains to be so constructed; that Zykan, Inc., failed to secure a permit for the planned channel improvement and failed to construct the storm water channel between Midland Boulevard and Pebble Beach from Fox Hills Drive and Chaucer Avenue as provided by its submitted plan; that the failure to complete the channel improvement has interfered with drainage through the channel, has caused ponding and pooling of water in the channel, has caused undermining of banks and bed of the watercourse and eroding of banks to the hazard and danger of property, all of which creates a public nuisance and hazard and danger to the peace, safety, health, and general welfare of the public; that Zykan, Inc., has failed and refused to comply with the request of MSD to complete the planned drainage channel improvement; that MSD's suit is in behalf of the citizens of St. Louis County, The Metropolitan Sewer District, and the State of Missouri, and it has no adequate remedy at law. The prayer sought an order compelling Zykan, Inc., to commence and complete construction of the drainage channel through Midland Valley Estates, Plats 2 and 3, in accordance with plans submitted by Zykan, Inc., to MSD and approved by MSD, and in compliance with Ordinances 44 and 353 of MSD.

In Count II plaintiffs Fischer, husband and wife, alleged that defendant Frank E. Zykan is the principal officer and director of, and dominates and controls each of the corporate defendants; that he and the corporations together were the developers of Midland Valley Estates, Plat 3; that defendant Frank E. Zykan Realty Company was the real estate agent for all defendants and sold the lots and improvements in Midland Valley Estates, Plat 3, to the Fischers and others; that on April 1, 1961, the Fischers entered into a written contract with defendant Valley Construction Company as seller and defendant Frank E. Zykan Realty Company as agent for seller for purchase of Lot 75, Midland Valley Estates, Plat 3, together with improvements known as and numbered 10025 Pebble Beach Drive, for $25,000, and the contract provided, among other things: "drainage ditch in rear to be completed by developer in accordance with plans approved by and on file with The Metropolitan St. Louis Sewer District"; that on April 17, 1961, the contract was consummated by execution and delivery of a general warranty deed by defendant Ure Construction Company to the Fischers; that despite the submission and approval of plans and issuance of permits for construction, improvement, and completion of the drainage ditch in Midland Valley Estates, Plat 3, defendants have failed so to do, and plaintiffs are without adequate remedy at law and without protection unless equity protects their rights and orders construction and completion of the ditch; that plaintiffs, in consummating the sale, relied upon defendants' representations that the improvement would be made in accordance with their submitted and approved plans; that defendants' failure has created a nuisance and health hazard resulting in diminution of value damages of $25,000 and punitive damages of $10,000. Fischers also prayed for an order compelling defendants to construct and complete the drainage channel, and for the alleged actual and punitive damages.

In Count III plaintiffs Kuhlmann and Scott (Mrs. Scott is Mrs. Kuhlmann's mother) made allegations similar to those

of the Fischers but with respect to Lot 113, Midland Valley Estates, Plat 3, 10029 Pebble Beach Drive, which they acquired by deed from defendant Valley Construction Company September 28, 1962, for $26,650. Their sales contract of August 31, 1962, provided: "The drainage ditch at rear of property to be concreted in accordance with plans and specifications on file with and approved by The St. Louis Metropolitan Sewer District." Their prayer also sought the order compelling defendants to construct and complete the drainage channel and sought $25,000 actual and $25,000 punitive damages.

Defendants answered, admitting their failure to construct the drainage improvement and their execution of the sales contracts, and alleging misjoinder of parties and actions, and defenses of plaintiffs' laches and impossibility of performance.

By Request for Admission of Facts and Genuineness of Documents, plaintiffs secured the following admissions: That the sales contracts and warranty deeds between plaintiffs and defendants were genuine; that defendant Frank E. Zykan or his straw party or nominee is the majority stockholder of each of the defendant corporations; that none of the defendants have secured a permit for the channel improvement described in plaintiffs' petition; that no channel improvements have been commenced, undertaken, or constructed by defendants for the storm water channel between Midland Boulevard and Pebble Beach from Fox Hills Drive and Chaucer Avenue, St. Louis County, in Midland Valley Estates, Plats 2 and 3; that the drainage ditch in the rear of the Fischer property has not been completed or improved by defendants in accordance with plans approved by and on file with The Metropolitan St. Louis Sewer District; that the drainage ditch at the rear of Kuhlmanns' property has not been concreted nor any work undertaken by defendants in accordance with plans and specifications on file with and approved by MSD; that defendant Frank E. Zykan, Inc., in submission of plans for improvement and construction of drainage facilities in Midland Valley Estates, Plat 3, was acting for itself and on behalf of and as agent for all defendants; that defendant Frank E. Zykan Realty Company was the real estate agent for all defendants in the two sales to plaintiffs; that none of the work provided for in the two sales contracts has been commenced or undertaken by defendants; that the drainage ditch to the rear of the individual plaintiffs' properties has widened and deepened and its banks have eroded and crumbled since plaintiffs purchased their properties; and, "12. That at all times herein involved the defendant corporations were and are the alter ego of defendant Frank E. Zykan."

Upon commencement of trial April 1, 1969, defendants orally moved to strike admission 12 on the ground it "calls for a conclusion of law, and that the matters requested to be admitted therein are immaterial, irrelevant to the issues * * * and further, are at variance with the actual pleadings of the plaintiffs * * *." Plaintiffs' objection that defendants' motion was out of time and without merit was sustained and the admissions were before the court for its consideration.

In 1959 Frank E. Zykan commenced development of Midland Valley Estates, a residential subdivision in Overland, St. Louis County, Missouri. He recorded the subdivision in three plats, Plats 1, 2, and 3, the latter of which included the Fischer and Kuhlmann homes. It also represented and included the majority of the lots between Pebble Beach Drive on the south, Midland Boulevard on the north, Fox Hills Drive on the west, and Chaucer Avenue on the east, except for five lots on the east side. It also contains the entire length of subject drainage ditch.

All three plats were prepared by Joyce Company, surveyors and engineers, upon the order of Frank E. Zykan, and Plat 3 shows a "Drainage Right-of-way (50' wide)" running eastwardly from Fox Hills

Drive on the west to Chaucer Avenue on the east, lying between Pebble Beach Drive and Midland Boulevard. Plat 3 bore this legend: "The undersigned owners * * * have caused said tract to be surveyed and subdivided in the manner shown on the above plat and * * * (All streets, 50 feet wide) are hereby dedicated to public use forever. The easements shown * * * are hereby granted to the City of Overland for the purpose of installing and maintaining public utilities, in, under, and over said strips, and The Metropolitan St. Louis Sewer District as their interests may appear for sewer purposes * * *."

This dedication was executed by Frank E. Zykan as president and Tex McClintock as secretary, for and on behalf of Frank E. Zykan, Inc., and was acknowledged by Frank E. Zykan as president of Frank E. Zykan, Inc., May 7, 1960, before Jimmie Stuart, Notary Public. The plat was approved by Ordinance 700 by the Mayor and Board of Aldermen of Overland May 9, 1960, and it was duly recorded May 19, 1960.

On March 21, 1960, the plans for sanitary and storm water sewers for Midland Valley Estates, Plat 3, were submitted to The Metropolitan St. Louis Sewer District. These plans were prepared for defendant Frank E. Zykan by the Joyce Company and, after review, were approved by MSD May 12, 1960, for construction of subject improvements. The plans provided for a concrete liner to be constructed in the ditch at the rear or north line of the individual plaintiffs' properties in the "Drainage Right-of-Way (50' Wide)" designated on Plat 3, Midland Valley Estates. The liner was to have an 8'-wide bottom of 5"-thick concrete with side walls of 4"-thick concrete at a 1½ to 1 side slope. The top of the ditch was to be 18' 6" wide and contained within the 50' dedicated right of way. The ditch was to be a major drainage facility in the entire subdivision. Another provision of the storm water drainage system in the area was for

drainage pipes leading from inlets on Pebble Beach Drive to the sides of the drainage ditch which were to connect with and discharge through the liner's side wall. These pipes were to be supported by the concrete wall of the channel liner and reinforced by a concrete collar to hold them against the wall, and water would discharge through such pipes directly into the drainage ditch. These pipes were to be 24" in diameter. One was to be constructed between Lots 75 and 113 of Plat 3 on a 15'-wide easement between the individual plaintiffs' properties. This pipe was connected to an inlet in Pebble Beach Drive and collected storm water from a sizable area for discharge into the drainage ditch.

The concrete ditch liner provided in the plans was never constructed by defendants. The inlet pipe was submerged and did not appear to carry water to the ditch as contemplated by the plans. The channel liner was required by MSD to eliminate erosion and possible ponding in the ditch if left in its natural state.

MSD would not have approved the provision for street drains if it had known the concrete channel liner and the concrete collar to fasten the street drain to the channel wall would not be constructed. The drainage ditch in its unimproved state is not adequate to carry the area's drainage water. Had the ditch been constructed in 1962, estimated cost would have been $30,000 to $35,000. At the time of trial, cost of construction was estimated at $45,000. Subsequent to original submission and approval of the plans, MSD changed some of its requirements, mainly as to thickness of concrete and type of reinforcement, and such would increase the estimated cost of construction, as of trial, to $50,000. In either event, the originally approved improvements would still work, even though such would not have been approved if submitted as of trial time.

Richard and Jeanette L. Fischer executed a sales contract April 1, 1961, with Valley Construction Company for purchase of

Lot 75, Midland Valley Estates, Plat 3, 10025 Pebble Beach Drive. The sale was consummated April 17, 1961, by warranty deed executed by Ure Construction Company. At the closing, the Fischers received a survey prepared by Joyce Company by order of Frank E. Zykan showing boundary lines which do not include any of the "Drainage Right-of-Way (50′ Wide)," as shown by Plat 3. The sales contract, although executed by Valley Construction Company, was consummated by Ure Construction Company, such being explained as a "goof" by Jimmie Stuart, long-time office manager and employee of Mr. Zykan, who prepared the deed.

At the time of purchase there were some weeds in the ditch, and it was represented on behalf of Zykan that the drainage ditch would be improved per plans on file with MSD.

Zykan's people did some bulldozing in the ditch at one time which created a pool of water. The storm water conduit between Lots 75 and 113 had sunk, and pooled water existed at all times. At one time water from the unimproved ditch encroached as far as the Fischers' basement. Backwater has created a spongy soil condition and the ditch breeds odors, mosquitoes, and rats. Mr. Fischer spoke to Mr. Zykan about a year after moving into his home about completion of the improvements, and Mr. Zykan gave various reasons for the failure to accomplish the agreed improvements. By virtue of their low location, the Fischers have the most acute drainage problem in the area.

Mrs. Fischer corroborated her husband's testimony and stated also that Mr. Zykan, about eight months after she moved into their home, promised her he would complete the ditch. Some six or eight months later he did some regrading in the ditch, but was stopped by MSD. He denied his promises to complete the ditch, but upon reminder of his contract, stated he would concrete the ditch but had no money. The bulldozing in December, 1968, made condi-

tions worse with respect to stagnant water, mosquitoes, rats, and pooling.

The Kuhlmanns and Mrs. Scott executed their sales contract for Lot 113 August 31, 1962, and the sale was consummated September 28, 1962, by warranty deed from Valley Construction Company. They received a survey of their property, showing also the 50′ drainage right of way, and their purchase was also conditioned upon express representations from Mr. Zykan that the concrete ditch would be installed according to plans approved by MSD. The Kuhlmanns endeavored, on many occasions, to get Mr. Zykan to complete his storm water improvements, but to no avail. They would not have purchased the home without the promise of the drainage ditch improvement. Mr. Kuhlmann also noted the weeds in the ditch and the ineffectiveness of the Pebble Beach channel pipe. He also noted the work of December, 1968, directed by Mr. Zykan, after which the ditch was shallower, fuller of growth, and more eroded. He spoke of two overflows onto his property and of problems with stagnant water and rats. He, too, was advised by Mr. Zykan, upon question, that the improvements had not been accomplished because Mr. Zykan was out of funds.

Mrs. Scott, mother of Mrs. Kuhlmann, recalled Mr. Zykan's promise to finish the ditch. She, too, relied upon his promises with respect to the purchase of Lot 113. She complained of mosquitoes, odors, weeds, and rats, and of Mr. Zykan's failure to live up to his promises.

Mr. Zykan, prior to trial, in December, 1968, attempted some work on the ditch behind plaintiffs' homes. He had no permit for such work and was stopped by MSD because the work did not meet with that proposed and required by the plans.

Arthur Schneider, on behalf of the individual plaintiffs, set depreciation damages to plaintiffs' residences by virtue of the unimproved ditch at $6,750.

Warren Jones, on behalf of the individual plaintiffs, stated the existing conditions rendered the plaintiffs' homes unsalable. "I would ask twenty-nine five and take twenty-eight as the lowest."

Phelim O'Toole, on behalf of defendants, utilizing reproduction cost method and market data method, stated that the Fischer residence would be worth $1,400 more and that the Kuhlmann residence would be worth $1,425 more were it not for the drainage ditch condition.

The record further shows that defendant Frank E. Zykan was the president and treasurer of defendant Frank E. Zykan, Inc.; that he and his wife owned 98% of its stock; that he and Jimmie Stuart operated the corporation; that defendant Frank E. Zykan developed Midland Valley Estates in 1961 and 1962, and that it also owned ground upon which other companies built homes; that he is president of defendant Valley Construction Company, established to construct homes in Midland Valley Estates, Plat 3; that he and his wife were officers of this corporation; that the same three persons owned all its stock as well as that of defendant Ure Construction Company which also constructed residences in Plat 3; that stock in defendant Frank E. Zykan Realty Company is owned by him, his auditor, and Jimmie Stuart; and, according to Jimmie Stuart, Mr. Zykan was not a gentle man, he expects his orders to be obeyed under penalty of discharge, he dominated, bossed, and ran the companies.

The court found that: all plaintiffs are proper parties and the relief requested by each arises out of the same transactions and occurrences and involves questions of fact and law common to all; plaintiff Metropolitan Sewer District has full power within its boundaries to control and regulate drainage and sewer facilities; plaintiffs Fischer and Kuhlmann entered into sales contracts in which defendant Frank E. Zykan Realty Company was agent for the defendant sellers, and each contract contained a clause providing for completion by the sellers of a drainage ditch in Midland Valley Estates in accordance with plans submitted by defendants to MSD and approved by MSD; defendant Frank E. Zykan, on behalf of all defendants, submitted the drainage plans to MSD, and the drainage ditch shown for Midland Valley Estates, Plats 2 and 3, was an integral part of drainage provisions which affected individual plaintiffs' Lots 75 and 113, and the failure to construct the improvements created a public nuisance with resultant damage to individual plaintiffs; the four defendant corporations are and were the alter ego of defendant Frank E. Zykan and he is the owner, dominant spirit, personality, sole and undisputed management and executive officer of the corporate defendants; defendants platted Midland Valley Estates and dedicated the 50'-wide drainage right of way to MSD as an easement in trust for public use, and defendants may build and construct their channel improvement without trespassing upon property of others and upon failure to so act the court has the power and duty to order them to make the improvement; the court has the power and duty to decree specific performance of defendants' contracts with individual plaintiffs, and to award individual plaintiffs damages for losses sustained by them due to defendants' failure to construct the ditch; laches is not an issue because delay, if any, is due to defendants' conduct; and any increase in cost of the improvement is due to defendants' delay and nonfeasance.

The court's decree and judgment ordered and directed defendants to construct and build the channel improvement in Midland Valley Estates as provided in plans submitted to MSD by defendants March 21, 1960, and approved by MSD May 12, 1960, and awarded damages to plaintiffs Fischer in sum $1,400 and to plaintiffs Kuhlmann in sum $1,450.

This review is upon both the law and the evidence, and the judgment shall not be

set aside unless clearly erroneous. Rule 73.01(d), V.A.M.R.

Appellants' Point I asserts the court erred in granting relief to plaintiff Metropolitan St. Louis Sewer District because there was: A. No proof of water pollution necessary to invocation of the District's power under Section 3.020 of its Charter, and no proof that the District had taken action necessary to exercise control over the creek under Section 3.040 of its Charter; B. No proof of public nuisance for exercise of the District's power to correct a public nuisance; C. No proof that defendants, as opposed to plaintiffs, particularly Frank E. Zykan, Inc., the only defendant mentioned in Count I, were presently maintaining the conditions described in the record, and the decree would merely right a past wrong; D. No contract between MDS and any of the defendants and MSD was not a third-party beneficiary of the two sales contracts.

■ Appellants' argument recognizes that "MDS unquestionably has general power over sanitary and storm water disposal systems as set out in its charter," and cautions that it must exercise its jurisdiction within limits of that charter. City of Bellefontaine Neighbors v. J. J. Kelley R. & B. Co., 460 S.W.2d 298, 302 [2] (Mo. App.1970).

■ All plaintiffs have joined in this one suit and petitioned the court to exercise its equity powers and order defendants to construct and complete the drainage ditch in the 50'-wide drainage right of way shown on defendants' plats of Midland Valley Estates in accordance with plans for the ditch which defendants submitted to and approved by plaintiff MSD and which affected individual plaintiffs' respective lots 75 and 113. The individual plaintiffs have also asserted actions for damages. The equity relief thus sought by all plaintiffs arises "out of the same transaction, occurrence or series of transactions or occurrences" and presents questions of law and fact "common to all." Joinder is permissible when these conditions exist, and it is not necessary that all plaintiffs "be interested in obtaining * * * all the relief demanded. Judgment may be given for one or more * * * plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities." Rule 52.05 (a), V.A.M.R.

■ In joining with the individual plaintiffs in seeking equity relief, plaintiff MSD is within its powers and jurisdiction. The evidence shows that defendants submitted their plans for both sanitary and storm water drainage in Midland Valley Estates, Plat 3, to MSD, and that MSD approved the plans. It is also shown that defendants' failure to construct the storm water facilities, particularly the concrete liner in the ditch between Midland Boulevard and Pebble Beach Drive from Fox Hills Drive to Chaucer Avenue, and their further development of the subdivision, have created and will continue to create a public nuisance and danger to peace and safety, health and general welfare of the public.

■ The plan of The Metropolitan St. Louis Sewer District adopted by the voters of St. Louis and St. Louis County February 9, 1954, pursuant to Section 30, Article VI, Constitution of Missouri, 1945, V.A. M.S., authorizes MSD to perform "services, common to the area for the protection of the public health and welfare in connection with drainage and sewage disposal." State v. Metropolitan St. Louis Sewer District, 365 Mo. 1, 275 S.W.2d 225, 230 [2] (Banc 1955); Section 1.010, Article 1, Plan of The Metropolitan St. Louis Sewer District. Section 3.020, Article 3 of the Plan enumerates twenty-five powers of the District, among which is the reference made by appellants to "(1) * * * to protect the public health and welfare by preventing or abating the pollution of water * * *." Appellants also refer to Section 3.040, Article 3 of the Plan which authorizes the District to police streams in

which connection it "may by ordinance prohibit the depositing, dumping, or otherwise disposing * * * of any sewage, garbage, rubbish, industrial wastes, loose materials, oils or other soluble or insoluble solid or liquid matter which may pollute the stream * * *." Other pertinent examples of enumerated powers in Section 3.020, Article 3, are:

"(2) To prepare or cause to be prepared and to revise and adopt plans, designs, and estimates of costs, of a system or systems of * * * fall sewers, trunks, mains, submains, interceptors, lateral sewers, outlets * * *, storm water drains, * * * and any and all other structures, systems, works, and things which, in the judgment of the Board, will provide an effective and advantageous means for insuring the area within such District of adequate sanitary and storm water drainage * * *."

"(7) To contract with municipalities, districts, other public agencies, individuals, or private corporations, or any of them whether within or without the District, for the construction, use, or maintenance of common or joint sewers, drains, outlets, and disposal plants, or for the performance of any service required by the District."

"(8) To contract with, and thereunder to permit municipalities, districts, other public agencies, individuals, or private corporations, or any of them whether within or without the District, to connect with and use the facilities of the District * * *."

"(19) To approve, revise, or reject the plans and designs of all * * * storm water drains * * * and works proposed to be constructed, altered, or reconstructed by any other person or corporation, private or public, in the District. No such sewer or drainage facilities shall be constructed or reconstructed without the approval of the District. Any such work shall be subject to inspection and supervision of the District."

"(23) To require the owner or owners of any real property capable of being efficiently served by the facilities of the District to connect with and use such facilities in any case where the Board finds that the sewage or drainage from such property constitutes a public nuisance or a danger to public health or safety."

These provisions are not exclusive of the District's powers, however, because Section 3.020(1), Article 3, also provides that "no enumeration of powers in this Plan shall operate to restrict the meaning of this general grant of power or to exclude other powers comprehended within this general grant."

When these provisions are considered in the context of the whole plan and its general purpose, it is clear that the plan does not limit the power and interest of the District in its control of storm water drainage and its right to relief to the two situations noted by appellants with respect to pollution. State v. Metropolitan St. Louis Sewer District, supra.

Pursuant to its powers, MSD duly enacted ordinances providing for applications for permits for construction of drainage facilities. Defendants neither secured the permits nor constructed their planned facilities for storm water drainage in Midland Estates. In joining with the individual plaintiffs in the demand for equity relief, MSD acted for and on behalf of the citizens within the District and of the State of Missouri to abate a public nuisance created by the failure of defendants to build their proposed drainage facilities and their acts in furtherance of developing the area without constructing the facilities. The right of a municipal corporation such as MSD to sue to enjoin or abate a public nuisance affecting matters entrusted to it is well established, irrespective of monetary or other special damage. City of Sturgeon v. Wabash Ry. Co., 223 Mo.App. 633, 17 S.W.2d 616 (1929). The City of Sturgeon sued to compel Wabash and its lessees to remove certain buildings along defendant's property which the city had by ordinance declared to be a nuisance on the

ground the buildings obstructed view of the street and defendant's tracks. The trial court granted relief on its finding that the buildings constituted a public nuisance by obstructing the view of and creating danger to members of the public who might use the streets. The reviewing court recognized that the city had no special damage to sustain a suit to abate a private nuisance and applied the rule that "the generality of the peril caused by the maintenance of the thing complained of is sufficient to render it a public nuisance, if it be a nuisance at all. * * * The nuisance need not affect everybody, in order to be a public one, if it affects all those who are using a right which is in common to all." 17 S.W.2d l. c. 619 [6, 7]. See also McQuillan, Municipal Corporations, Vol. 7, 3rd ed., 1968 Rev., § 24.268, p. 124, that the doctrine of judicial relief in aid of enforcement of municipal health regulations is applicable to drainage and sewage regulations. Biggs v. Griffith, 231 S.W.2d 875 (Mo.App.1950), Smith v. City of Sedalia, 152 Mo. 283, 53 S.W. 907 (1899), and Lademan v. Lamb Const. Co., 297 S.W. 184 (Mo.App.1927), are not in point because they involved suits between private litigants and did not concern the general public nor the efforts of a public body to abate a public nuisance.

 Appellants argue, however, that their conduct and omissions did not constitute a public nuisance. They assert the only evidence offered by plaintiffs "bore strictly on the damages and annoyances sustained by the two property owners," and that such did not approach the degree of proof necessary to establish a public nuisance. Cf. City of St. Louis v. Art Publication Soc., 203 S.W.2d 902, 905 [1] (Mo. App.1947).

This understatement of the proof available on the issue of public nuisance overlooks the thrust of most of the evidence in the case. Defendants, pursuant to MSD ordinances, submitted their plan for both sanitary and storm water drainage in Mid-

land Valley Estates to MSD and secured approval of the plan from MSD. That portion of the plan affecting Midland Valley Estates was an integral part of drainage for the entire area. At the very least, the drainage ditch from Fox Hills Drive to the west of individual plaintiffs' properties and Chaucer Avenue on the east, as opposed to the limits of the two lots themselves, is involved, and this portion of the ditch is connected to and involved with the whole subject area of St. Louis County within the District's boundaries. Failure to construct the ditch as contracted for and represented to individual defendants has affected drainage over the entire area, affects subject total plan, and endangers the health and welfare of an unlimited area. The unsightly and unhealthy condition of the area, of which plaintiffs' properties are but a small part, as a result of defendants' failure to construct its proposed and promised drainage facilities is undisputed. A constant danger of flooding exists, and the ditch is inadequate in its unimproved condition to carry the storm water that flows into it. This evidence meets the test of a public nuisance. City of Sturgeon v. Wabash Ry. Co., supra.

 Appellants make a further argument that it is not defendants who now maintain this condition. "It is MSD's coplaintiffs themselves who do so." Suffice to say that there is no evidence that the individual plaintiffs maintain the condition of the ditch. It is not on their property; they are doing all they can to have the condition remedied, and its condition is a result and continuance of defendants' failure to live up to their promised improvement of it by construction of channels and inlets in accordance with their plan.

 Appellants make a similar pointless argument, asserting that their Point I "assumes that the relief sought by and granted to MSD is that of an injunction. In reading the prayer to Count I and the court decree, it is not clear that this is the case. But if we assume that MSD is suing

for specific performance, the question must be answered: specific performance of what?" Suffice to note the prayer of MSD is for the court "to issue an order compelling [defendants] to immediately begin construction on the drainage channel through the property developed by the defendant[s] known as Midland Valley Estates, Plats 2 and 3, in accordance with the plan submitted," etc., and the decree "ordered, instructed and directed [defendants] to construct and build the channel improvement as provided for in the plans submitted * * * for development and construction of stormwater and sanitary sewers in Midland Valley Estates Subdivision, Plats 2 and 3 * * *."

Under Point II appellants assert the court erred in requiring defendants to perform the contracts with the individual plaintiffs by constructing the drainage ditch; and that specific performance should not be granted the individual plaintiffs, especially as to those defendants who were not parties to the two sales contracts, because: A. The contracts called only for construction of a drainage ditch at the rear of plaintiffs' properties and the court required performance of more than that called for by the contracts; and due to higher costs of construction the court granted more than that to which plaintiffs were entitled under their contracts; B. The court required defendant to do that which is impossible in that the plans no longer meet MSD requirements and no building permit can be obtained based on such plans; C. The court's decree compels defendants to trespass on private property in that they no longer own the property abutting the creek; D. The sales contracts are so indefinite, obscure, imprecise, and inexact that their performance according to a most doubtful interpretation should not be required, especially where money damages would do complete justice to the individual plaintiffs regardless of the meaning placed on the contracts; E. Defendants other than Ure Construction and Valley Construction Co., the defend-

ants who executed the contracts, cannot be ordered to perform contracts to which they were not parties; F. Admission 12, that defendant corporations were the alter ego of defendant Frank E. Zykan cannot support a decree of specific performance for the reasons: (1) Such admission did not call for an admission of fact but of a legal conclusion, and, even so, defendants advised plaintiffs prior to trial that the admission was not correct, and the issue was treated as a viable issue by introduction of evidence on the point; (2) Even if the admission be accepted as binding, this would be insufficient to justify judgment against him because there was no proof the corporate instrumentalities were used to perpetrate a fraud, work an injustice, or accomplish an unlawful purpose; G. Plaintiffs unreasonably delayed bringing their action and as a result a ditch which would have cost $30,000 at the time the contracts were breached would now cost $50,000 based upon new construction standards of MSD; H. The cost of constructing the ditch now is $45,000 to $50,000, depending upon whether prior or new standards of MSD are applicable, and plaintiffs' highest damages were placed at $13,500, making the court's judgment disproportionate where money judgments would be a complete remedy to plaintiffs; I. This court should exercise its discretion against affirmance of specific performance where to affirm would (1) give plaintiffs the benefit of every doubt in interpretation of the contracts, (2) require defendants to violate ordinances of MSD to build a ditch for which they can get no permit, (3) give plaintiffs more than they bargained for, (4) require a trespass on private property, (5) give plaintiffs the benefit of their prejudicial delay, (6) impose a hardship on defendants wholly disproportionate to plaintiffs' monetary loss. (I appears to be a restatement of II A, B, C, D, G, and H, and appellants cite no additional authorities to support it.)

■ Defendants recorded Midland Valley Estates, Plat 2, October 20, 1958, and

Plat 3, May 19, 1960. Both plats show the 50'-wide right of way for drainage between Fox Hills Drive on the west and Chaucer Avenue to the east and to the rear of plaintiffs' Lots 75 and 113. The easement was granted to the City of Overland for installation of utilities and to MSD for sewer purposes. Approval had been given the plats by the city and MSD prior to their recordation by defendants. The recordation divested defendants of title to the easement and placed its control in the public authorities without any formal acceptance by them, and the dedication of the easement vested a fee in trust in MSD for sewer purposes. Ginter v. City of Webster Groves, 349 S.W.2d 895 (Mo.1961).

■ Defendants contracted in their own language with individual plaintiffs to construct and install a concrete liner in the sewer easement in accordance with plans they submitted to and had approved by MSD. The evidence shows that both sides clearly understood that the entire ditch was to be completed, and the court properly ordered all defendants to perform the agreement made with the individual plaintiffs and thereby also fulfill the promises and representations made to the public authority, MSD. MSD, by joining with plaintiffs and asking for construction of the ditch in the public easement in its trust, is not withholding any permission for defendants to go upon the easement. No one else owns or controls the easement. Consequently, defendants need have no fear of trespassing on private property in doing that which the court ordered.

■ Plaintiffs alleged and introduced proof, and defendants admitted, that all defendants are the alter ego and under the domination and control of defendant Frank E. Zykan. On this evidence the court properly found the corporate defendants to be the alter ego of defendant Frank E. Zykan and that they were under his domination, and properly held them all liable and responsible to plaintiffs. Osler v. Joplin Life Ins. Co., 164 S.W.2d 295, 298 (Mo.1942); Edward Finch Co. v. Robie, 12 F.2d 360, 362 (8th Cir. 1926).

■ Appellants would evade the effect given by the court to this proof and particularly to the alter ego admission, No. 12, by their argument that the admission was a conclusion and that they advised plaintiffs that it was erroneous and objected to it at trial. Plaintiffs served their request for admissions September 12, 1968, after issue was joined on the pleadings. Their request was made in accordance with Rule 59.01, V.A.M.R., and sought admissions within ten days after service of the request, also in compliance with the rule. Defendants served neither denial nor written objections to any of the admissions sought as required by the rule, and all matters in the request were, under the rule, "deemed admitted." Kraehe v. Dorsey, 432 S.W.2d 367, 370[1, 2] (Mo.App.1968).

■ Defendants need have no fear that the court has ordered them to construct an improvement other than that described in their plans submitted to MSD March 21, 1960, either as to specifications or higher cost on account of changed standards. Nor need they have any fear that they will be in violation of MSD's present standards. Appellants' arguments to this effect overlook MSD's presence as a party to this suit. The decree ordering construction in accordance with the plans (and standards) of March 21, 1960, is as binding on MSD as it is on defendants, and MSD has not appealed from any part of the decree.

■ Nor is laches on the part of plaintiffs present in this case. " 'Laches' is the neglect for an unreasonable and unexplained length of time under circumstances permitting diligence, to do what in law, should have been done. There is no fixed period within which a person must assert his claim or be barred by laches. The length of time depends upon the circumstances of the particular case. Mere delay in asserting a right does not of itself constitute laches; the delay involved must

work to the disadvantage and prejudice of the defendant. Laches is a question of fact to be determined from all the evidence and circumstances adduced at trial. Equity does not encourage laches. * * * Laches cannot be invoked to defeat justice. It will be applied only where enforcement of the right asserted would work an injustice. * * * The burden of proof as to laches rests on the party asserting it * * *. ' * * * Where no one has been misled to his harm in any legal sense by the delay, and the situation has not materially changed, the delay is not fatal. * * *'" Lake Development Enterprises, Inc. v. Kojetinsky, 410 S.W.2d 361, 367–368 (Mo. App.1966).

■ It is not disputed that in 1962 defendants contracted with the individual plaintiffs to construct the drainage channel at the rear of their properties in accordance with plans previously filed with MSD and that they represented to MSD and the public which it represents by their plans that they would construct the drainage channel improvement. The defendants readily admit that they have done nothing toward their proposed construction, and regularly, since 1962, all parties have importuned and inquired of defendants when the channel was to be built. All such inquiries have been met with stall and delay tactics to the end that nothing has been done. Defendants knew the situation as well or better than did plaintiffs, and the delay of suit until February, 1967, in no way caused defendants to change their position of doing nothing. Similarly, defendants have had the use of the money necessary to the promised construction. In short, it is defendants' own breach which has created the present problem, and to reward them for their conduct would be to injure the innocent.

The same may be said with respect to added expense of construction on account of rising costs between 1962 and the present. It is defendants' own delay which has given rise to any added cost on account of time elapsed.

■

Similarly, the disproportion between cost of specific performance and plaintiffs' actual damages has been augmented by defendants' delay, at least to the extent of the rise in cost between 1962 and the present.

By Point III appellants contend the court erred in granting the individual plaintiffs money damages in addition to specific performance. They assert there was no proof to sustain such a finding "other than evidence regarding depreciation in value of their homes," and the construction of a new concrete ditch would eliminate the cause for such depreciation. They say also the effect of the judgment was to grant plaintiffs dual relief for the same wrong and damage.

■ Appellants recognize there is no prohibition against a court of equity decreeing both specific performance and awarding damages. 49 Am.Jur., Specific Performance, § 174. They argue that plaintiffs' evidence showed the unimproved ditch caused the depreciation in value. The court ordered the ditch improved. Where, then, is there room for damages along with specific performance?

The short answer is that the damages were assessed to compensate plaintiffs for the depreciation in value of their property as a result of defendants' failure to construct the channel from the time of breach to the decree, and the ordered performance would prevent the same damage thereafter.

■ In a broader sense, the trial court possessed the power to order the promised improvement to be constructed. 81 C.J.S., Specific Performance, § 74b(1). Plaintiffs had an interest in the improvement and damages alone may not be sufficient because of their continuation absent the improvement. In such circumstances, specific performance has been granted. Wilkinson v. Vaughn, 419 S.W.2d 1 (Mo. 1967); Kansas City v. Kansas City Terminal Ry. Co., 324 Mo. 882, 25 S.W.2d 1055 (Banc 1929); Snip v. City of Lamar, 239 Mo.App. 824, 201 S.W.2d 790 (1947).

■ And when a court of equity once acquires jurisdiction it may retain it to do full and complete justice even though it involves adjudicating matters of law or rendering a money judgment, particularly where there is a general prayer for relief or a prayer for both types of relief. Anison v. Rice, 282 S.W.2d 497 (Mo.1955); McDown v. Wilson, 426 S.W.2d 112 (Mo. App.1968).

■ Considerable evidence was introduced to show damage to and depreciation in value of plaintiff's properties by reason of the unimproved condition of the ditch. The ordered improvement is to cure any such damage in the future but the past damage due to absence of the improvement is an accomplished matter. Accordingly, it was proper for the court to attempt to do complete justice to the individual plaintiffs and award them damages for defendants' wrongdoing in the past in addition to requiring defendants to terminate the damage-causing condition by constructing the drainage channel.

■ Finally, Point IV, appellants complain the decision below was improper, especially where the evidence on the amount of damages strongly favors the position of defendants. They assert the testimony of witnesses Jones and Schneider on behalf of plaintiffs is unworthy of belief and should receive little weight. On the other hand, defendants' witness O'Toole substantiated his opinion indicating that he was correct in his opinion that the individual plaintiffs sustained very little economic loss due to the present condition of the creek.

It is difficult to determine what complaint appellants are now presenting because it is apparent from the record that the trial judge agreed with defendants' expert witness on the issue of damages. Mr. O'Toole estimated Fischers' damage at $1,375 to $1,400 and Kuhlmanns' damage at $1,400 to $1,425. The trial court obviously accepted this opinion on plaintiffs' damages and awarded Fischers $1,400 and Kuhlmanns $1,450. Plaintiffs have not appealed from such award and, consequently, it is unnecessary to give further review to the disparity in the experts' testimony.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the Court.

All of the Judges concur.